THORNBURG, Judge.
Perry Caudill ("Petitioner Caudill") and Dixie Sales ("Petitioner Dixie Sales") appeal a 12 June 2003 order of the Guilford County Superior Court granting judgment on the record in favor of respondent City of Greensboro Board of Adjustment ("the Board") and intervenor Downtown Greensboro Renaissance ("DGR").
In a letter dated 23 December 2002, Petitioner Caudill requested an interpretation of Permitted Use Table 30-4-5-1 ("thePUT") from Greensboro zoning administrator Bill Ruska ("the zoning officer"). Specifically, the letter stated "[a] review of table 30-4-5-1 Permitted Uses indicates that professional baseball clubs may only be permitted to operate in the zoning classification Public and Institutional. I am asking that you confirm this or give a reason as to why this is not correct."
The zoning officer responded by letter indicating that Petitioner Caudill's interpretation of the PUT was incorrect and interpreting the PUT as follows: "Any professional sports team, including a professional baseball club, is permitted under the coliseums or stadiums designation in the line item `Auditoriums, Coliseums, or Stadiums.' Such uses are permitted in the following districts: Highway Business, Central Business, Shopping Center, Light Industrial and Public and Institutional." The zoning officer's letter also explained that the Baseball Clubs, Professional use listing in the PUT refers to a development standard limiting concession sales at Memorial Stadium, a limitation which only applies in the Public and Institutional ("PI") district.
Petitioner Caudill appealed the zoning officer's interpretation to the Greensboro Board of Adjustment and a hearing was held on the matter on 27 January 2003. At the hearing, the Board decided that Petitioner Caudill was an aggrieved party and thus had standing to pursue his appeal. The Board then voted to uphold the zoning officer's interpretation of the PUT. On 18February 2003 the Board entered a written order containing the following pertinent conclusions:
(a) "Baseball Clubs, Professional" as a permitted use are not restricted only to Public and Institutional zoning classifications.
(b) When a "Baseball Club, Professional" is operated as a permitted use in a Public and Institutional zoning classification, it must comply with the additional developmental standards in section 30-5-2.19.5(B) of the City Code.
On 19 March 2003, Petitioner Caudill and Petitioner Dixie Sales filed a petition for writ of certiorari in Guilford County Superior Court appealing the Board's order. On 31 March 2003, respondent Board filed a motion to dismiss and a response to the petition. On 16 April 2003, DGR moved to intervene in the matter, and this motion was allowed by consent order filed 5 May 2003. Finally, on 16 May 2003 respondent Board filed a motion to dismiss and in the alternative a motion for judgment on the record. A hearing was held on the matter and arguments were made by counsel on the issues of standing and interpretation of the PUT. On 12 June 2003, the superior court entered an order affirming the Board's decision, granting judgment on the record in favor of respondents and specifically indicating that petitioner Caudill had standing.
The issues presented for our review are: 1) whether either petitioner has standing to pursue this litigation and 2) whether the Board's interpretation of the PUT is correct. As we concludethat neither petitioner has standing, this Court does not have jurisdiction to reach petitioners' ordinance interpretation claim.
Standing
On appeal, DGR argues that the superior court erred in finding that petitioners Caudill and Dixie Sales have standing to appeal the zoning interpretation and asks that this Court dismiss petitioners' appeal for lack of subject matter jurisdiction. "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." Aubin v. Susi, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002), disc. rev. denied, 356 N.C. 610, 574 S.E.2d 474 (2002). In reviewing the superior court's determination that this case should not be dismissed for lack of standing, "[i]t is proper to conduct de novo review." Neuse River Found. Inc. v. Smithfield Foods, Inc., 155 N.C. App. 110, 114, 574 S.E.2d 48, 51 (2002), disc. rev. denied, 356 N.C. 675, 675, 577 S.E.2d 628, 628-29 (2003).
Under N.C. Gen. Stat. § 160A-388(b)(2003), a "person aggrieved" may seek review of the determination of a zoning officer to the Board of Adjustment. Further, under N.C. Gen. Stat. § 160A-388(e) (2003), an "aggrieved party" may appeal decisions of the Board of Adjustment to superior court by filing a petition for writ of certiorari. See Heery v. Town of Highlands Board of Adjustment, 61 N.C. App. 612, 613, 300 S.E.2d 869, 870 (1983). Thus, these "petitioners had standing only if they were aggrieved persons within the meaning of the statute." Id. "[North Carolina] courts have interpreted the legislation to mean that parties who have'standing' to bring a matter before the Board of Adjustment may also seek review of the Board's decision in court." Michael B. Brough & Philip P. Green, Jr., The Zoning Board of Adjustment in North Carolina 78 (2d ed. 1984) (citing Pigford v. Bd. of Adjustment, 49 N.C. App. 181, 270 S.E.2d 535 (1980), disc. rev. denied and appeal dismissed, 301 N.C. 722, 274 S.E.2d 230 (1981); Lee v. Board of Adjustment, 226 N.C. 107, 37 S.E.2d 128 (1946). If petitioners do not have standing, this Court does not have subject matter jurisdiction over this matter. See Sarda v. City/Cty. of Durham Bd. of Adjust., 156 N.C. App. 213, 575 S.E.2d 829 (2003) (dismissing appeal for lack of subject matter jurisdiction because petitioners lacked standing before both the superior court and this Court).
Whether this Court has jurisdiction over the subject matter of petitioners' appeal, therefore, is dependent on whether either petitioner is a person aggrieved by the zoning officer's interpretation of the zoning ordinance, as affirmed by the Board of Adjustment. "An aggrieved party is one who either shows a legal interest in the property affected or, in the case of a `nearby property owner, [shows] some special damage, distinct from the rest of the community, amounting to a reduction in the value of [that owner's] property.'" Lloyd v. Town of Chapel Hill, 127 N.C. App. 347, 350, 489 S.E.2d 898, 900 (1997)(alteration in original) (quoting Allen v. Burlington Bd. of Adjustment, 100 N.C. App. 615, 618, 397 S.E.2d 657, 659 (1990). Further, the damages that are alleged to result from a zoning decision cannot be too general. The evidence must support a finding that petitioner "will or has suffered any pecuniary loss to its property" due to the zoning decision. Kentallen, Inc. v. Town of Hillsborough, 110 N.C. App. 767, 770, 431 S.E.2d 231, 233 (1993) ("evidence presented before the Board, that the [result of the zoning decision] would increase `[t]he negative impact' on the petitioner's property and `would not be visually attractive,' is much too general . . .").
Further, it is not sufficient to merely allege aggrieved person status. Petitioners must present evidence which would allow the Board and reviewing courts to make a finding of the special damages that result from the zoning action. Id. "Once the petitioner's aggrieved status is properly put in issue, the trial court must, based on the evidence presented, determine whether an injury `has resulted or will result from [the] zoning action.'" Id. at 770, 431 S.E.2d at 232 (alteration in original)(citation omitted). "[T]he superior court failed to find that petitioners would be subject to `special damages' distinct from the rest of the community," thus "the petitioners are not `aggrieved' persons under N.C. Gen. Stat. § 160A-388(e) and they have no standing." Heery, 61 N.C. App. at 614, 300 S.E.2d at 870 (1983). We will separately address each petitioner's claims of standing.
Petitioner Dixie Sales
Petitioner Dixie Sales was not a party to the Board of Adjustment hearing and did not verify the petition before the superior court. Nor did the superior court make any finding or conclusion of law in reference to Petitioner Dixie Sales'sstanding. Absent any evidence in the record that Petitioner Dixie Sales is an aggrieved party, we conclude that Petitioner Dixie Sales lacks standing. N.C. Gen. Stat. § 160A-388(e) (2003); see Lloyd, 127 N.C. App. at 351, 489 S.E.2d at 901 (holding that the trial court erred in allowing intervenor's motion when "the record reveals no evidence which would sustain a finding by the trial court of special damages" and the trial court's order did not "contain such a finding . . ."). Accordingly, this Court does not have subject matter over any claim by this petitioner.
Petitioner Caudill
Thus, whether this Court has subject matter jurisdiction over this case depends on whether Petitioner Caudill had standing before the Board of Adjustment or the superior court.
Board Hearing
Petitioner Caudill did not attend the Board hearing, but rather, his attorney, under oath, spoke on his behalf. At the hearing, the attorney made two arguments concerning standing. First, Caudill is the owner of property zoned CB, the zone where DGR plans to build a stadium for the professional baseball team to play. Second, that traffic congestion due to the new use would cause a devaluation of Caudill's property because of the difficulty of customers wanting to access Caudill's gas station and auto repair business.
The attorney for DGR rebutted these arguments by presenting a study showing minimal impact on traffic due to the potential stadium and arguing that an increase in traffic would actually tendto benefit Petitioner Caudill's business. The attorney for DGR also presented maps of the location of the proposed stadium and Petitioner Caudill's business. Finally, the attorney for the DGR contended that the Board should not find that Caudill had standing based solely on the assertions of an attorney without any indication of adverse impact or diminution in value resulting from traffic flow changes.
Superior Court
Petitioner Caudill asserted the following in his verified petition for certiorari to the superior court:
The aforementioned violation of the Ordinance will specifically damage Petitioner Caudill. If DGR obtains a building permit for its proposed baseball stadium, the condition for the street closure will be satisfied, and a portion of West Lindsay Street will be closed. That street closure will damage Petitioner Caudill by diverting traffic away from Petitioner Caudill's businesses, the result of which will be a loss of revenue and profits.
The superior court made the following reference to standing in its order granting judgment on the record in favor of respondents:
The Board's finding that Caudill had standing to appeal was not arbitrary and capricious, was not based on any error of law, and was based on competent, material and substantive evidence. To the extent this issue is jurisdictional, the Court is satisfied that Mr. Caudill has standing.
Analysis
The dispositive issue on appeal is whether the sworn testimony of Petitioner Caudill's attorney at the Board hearing and Petitioner Caudill's assertions in the verified petition are sufficient to support a finding that Petitioner Caudill is anaggrieved party with standing to pursue the ordinance interpretation claim. After a careful review of the record, briefs, and arguments of the parties, we hold that they are not.
First, it is not enough that Petitioner Caudill owns property in the CB district. See Kentallen, 110 N.C. App. 767, 770, 431 S.E.2d 231, 233 (allegation that landowner was the owner of adjoining property not sufficient to confer aggrieved person status); see Sarda, 156 N.C. App. at 215, 575 S.E.2d at 831 (2003)("mere averment that [petitioners] own land in the immediate vicinity of the property" [that is the subject of the zoning action] . . . is insufficient to confer standing upon them").
The assertions of potential traffic congestion and/or diversion due to the closure of a nearby street are also insufficient to confer standing in the instant case. Petitioner Caudill failed to allege or present evidence showing how professional baseball clubs as a permitted use in the CB zone would cause a reduction of the value of his property, distinct from that suffered by the rest of the community. See Lloyd, 127 N.C. App. at 352, 489 S.E.2d at 901 (dismissing intervenor's purported appeal for lack of standing where nothing in the record "would sustain a finding [that] intervenors would be subject to special damages if the variances were granted")(emphasis added). Rather, the assertions made by Petitioner Caudill are general allegations of speculative damages to result from the construction of a stadium, a use which petitioner does not dispute is permitted in the CB zoning district. "Nowhere in the record before us does it appearthat the petitioner is a party aggrieved by the [Board's] ruling and entitled to judicial review." Pigford v. Bd. of Adjustment, 49 N.C. App. 181, 183, 270 S.E.2d 535, 536 (1980). Thus, the superior court erred in holding that "competent, material and substantive evidence" supports the Board's decision that Petitioner Caudill was an aggrieved party with standing to appeal.
Accordingly, the Board and superior court erred in determining that petitioners had standing to pursue the ordinance interpretation claim. Because we conclude that petitioners lack standing, we dismiss this appeal for lack of subject matter jurisdiction. See Sarda, 156 N.C. App. 213, 575 S.E.2d 829 (2003) (dismissing appeal for lack of subject matter jurisdiction because petitioners did not allege they would suffer special damages distinct from the rest of the community due to the disputed action of the Board of Adjustment).
The order appealed from is vacated, and the matter is remanded to the superior court for the entry of an order (1) dismissing the Petition for Writ of Certiorari filed 5 May 2003; and (2) vacating the judgment on the record granted 12 June 2003.
Vacated and remanded.
Judges HUDSON and GEER concur.
Report per Rule 30(e).