THELMA LLOYD, Petitioner v. TOWN OF CHAPEL HILL and the TOWN OF CHAPEL HILL BOARD OF ADJUSTMENT, Respondent, and MARK and VALERIE S. BROADWELL, KEVIN FOY, GLENN PARKS, and MARIO PIERONI, Intervenors

No. COA95-1440

(Filed 2 September 1997)

## Zoning § 113 (NCI4th)— variance from development ordinance—standing of intervenors—damages distinct from rest of the community

The trial court erred by finding that intervenors had standing in an action challenging the Chapel Hill Board of Adjustment's denial of petitioner's request for a variance from the Resource Conservation District provisions of the town's development ordinance where the intervenors were owners of near-by property but there was no evidence of a diminishment of the intervenors' property values and there was no showing that the intervenors would suffer any special damages "distinct" from the rest of the community. N.C.G.S. § 160A-388(e).

Appeal by intervenors and cross-appeal by petitioner from order entered 11 October 1995 by Judge David Q. LaBarre in Orange County Superior Court. Heard in the Court of Appeals 24 September 1996.

*Michael B. Brough & Associates, by Michael B. Brough, for petitioner cross-appellant.*

*Grainger R. Barrett for intervenors-appellants.*

———————

*Kevin Foy, pro se, for intervenors-appellants.*

*Ralph D. Karpinos, for Town of Chapel Hill and the Town of Chapel Hill Board of Adjustment.*

JOHN, Judge.

Intervenors appeal the trial court's order directing respondent the Town of Chapel Hill Board of Adjustment (the Board) "to approve, grant and issue" petitioner Thelma Lloyd's (Lloyd) request for ten variances from the Resource Conservation District (RCD) provisions of respondent the Town of Chapel Hill's (the Town) Development Ordinance (the Ordinance). Lloyd challenges intervenors' standing to intervene by cross-appeal. We hold intervenors were not aggrieved parties entitled to intervene in the proceedings at issue and consequently vacate that portion of the trial court's order concluding "[i]ntervenors have standing to appear in this matter" and dismiss the latter's purported appeal.

The relevant facts are not in dispute. Lloyd and her late husband subdivided and recorded the ten tracts in question in 1949. The parcels lie completely within the 100 year flood plain for Bolin Creek within the Town. Seeking to limit development in areas along watercourses within its boundaries, the Town in 1985 adopted the RCD provisions as Article 5 of the Ordinance. As a result, development or land-disturbing activity within the RCD is prohibited without a variance. Section 5.7 of the Ordinance permits the Board to grant a restricted variance to property owners who demonstrate that application of the RCD regulations would leave no legally reasonable use of their property.

Lloyd applied to the Board 26 April 1995 for variances to allow construction of single family homes on the ten lots. The Town Planning Department staff indicated Lloyd's applications complied with appropriate requirements of the RCD Ordinance and forwarded the requests to Town staff.

A public hearing on Lloyd's requests was conducted 7 June 1995 by the Board. Lloyd spoke in favor of allowing the variances, relying solely on the financial hardship caused by enforcement of the RCD restrictions as the basis for her petitions. Roger S. Waldon, Planning Director for the Town, submitted a memorandum indicating planning staff did not believe the proposed variances would increase flooding problems, pose additional threats to public safety, cause significant

removal of wildlife habitat, interfere with the Town's Greenway plan, create any public nuisance, or conflict with any law or ordinance. Those opposed to the variances, including intervenors, questioned whether Lloyd had met the requirements for obtaining a variance, spoke of existing problems with flooding in the Bolin Creek area, and expressed concern about the effect grant of the variances would have on flooding, traffic and safety in the community as well as upon open spaces and noise and pollution buffers. Intervenors also presented a petition containing 182 signatures purporting to oppose grant of the variances.

Immediately following the hearing, the Board voted six to four to allow the variances. However, because the relevant statute required a four-fifths affirmative vote to amend a zoning ordinance to grant a variance, Lloyd's applications were denied. *See* N.C.G.S. §160A-388(e) (1994).

On 7 July 1995, Lloyd filed a petition (the Petition) for writ of certiorari pursuant to G.S. § 160A-388(e) in Orange County Superior Court, seeking review of the action of the Board. The writ issued the same day. The Petition asserted, *inter alia*, that the Board's action was arbitrary and capricious and was not supported by competent or material evidence in the record.

The Town filed no answer to the Petition; however, intervenors filed a motion to intervene 4 August 1995. Intervenors alleged, *inter alia*, that their interests would

> not be adequately protected by Respondents Town of Chapel Hill and the Town of Chapel Hill Board of Adjustment, since the Chapel Hill Town Council has determined that the Town will not take an active role in this proceeding to defend the Board of Adjustment's decision.

The motion was accompanied by a single affidavit setting out the distance each intervenor lived from the ten tracts owned by Lloyd. The trial court allowed the motion to intervene 1 September 1995.

Following a hearing on the Petition conducted 25 September 1995, the trial court entered an order dated 11 October 1995 setting out conclusions of law to the effect, *inter alia*, that the parties seeking to intervene had standing in the matter, that Lloyd had complied with the Ordinance and met the requirements for exemption from the RCD restrictions, and that the Board failed to find, nor did evidence in the record indicate, that granting the variance would violate any

conditions set out in the Ordinance. The court further concluded the Board had a mandatory duty to grant a variance when conditions contained in the RCD Ordinance were met, and remanded the case to the Board with direction to issue Lloyd a variance from the RCD provisions for each of the ten lots.

Although the Town took no action to appeal the trial court's order, intervenors filed notice of appeal 31 October 1995. Lloyd filed notice of cross-appeal 8 November 1995.

We first note that while the Town failed to appeal, it has filed a brief in response to Lloyd's cross-appeal. The sole issue addressed by Lloyd is the standing of intervenors. In our discretion, we waive the motion requirement of N.C.R. App. P. 28(I) and consider the Town's brief an *amicus curiae* brief in support of intervenors. *See* N.C.R. App. P. 28(I), N.C.R. App. P. 2, and *In re Estate of Tucci*, 104 N.C. App. 142, 148, 408 S.E.2d 859, 863 (1991), *disc. review dismissed as improvidently granted*, 331 N.C. 749, 417 S.E.2d 236 (1992).

Lloyd's single argument on appeal is that "intervenors neither alleged nor demonstrated sufficient special damages from the variances at issue in this case to give them standing to intervene in this matter," and that their appeal consequently should be dismissed. We agree.

The instant action came to the trial court as an appeal by Lloyd from the Board's decision by means of writ of certiorari pursuant to G.S. § 160A-388(e). Only persons "aggrieved" within the meaning of the section possess standing to seek judicial review thereunder. An aggrieved party is one who either shows a legal interest in the property affected or, in the case of a "nearby property owner, [shows] some special damage, distinct from the rest of the community, amounting to a reduction in value of [that owner's] property." *Allen v. City of Burlington Bd. of Adjustment*, 100 N.C. App. 615, 618, 397 S.E.2d 657, 659 (1990) (citation omitted).

Significantly for purposes of the case *sub judice*, the allegations of a party seeking to participate in an action brought pursuant to G.S. § 160A-388(e) must reflect that said party is thus "aggrieved." *See Heery v. Zoning Board of Adjustment*, 61 N.C. App. 612, 613-14, 300 S.E.2d 869, 870 (1983) (petitioners alleged only "that they were property owners who would suffer a decline in the value of their land," but failed to allege they would be subject to " 'special damages' distinct from the rest of the community"); *see also Concerned Citizens v. Bd.*

*of Adjustment of Asheville*, 94 N.C. App. 364, 366, 380 S.E.2d 130, 131 (1989) (citation omitted) (plaintiffs failed to allege they "would be subject to 'special damages' distinct from the rest of the community," alleging "nothing more than that they [were] nearby or adjacent property owners," which was "insufficient to allege standing under N.C.G.S. § 160A-388(e)").

Intervenors' motion simply stated they "own[ed] property in the immediate vicinity" of that upon which variances had been sought and that grant of the variances "would materially adversely affect the value of [intervenors'] property." However, the motion contained no allegation of "special damages distinct from the rest of the community." *See Concerned Citizens v. Bd. of Adjustment of Asheville*, 94 N.C. App. at 366, 380 S.E.2d at 131, and *Heery v. Zoning Board of Adjustment*, 61 N.C. App. at 614, 300 S.E.2d at 870; *see also Davis v. City of Archdale*, 81 N.C. App. 505, 508, 344 S.E.2d 369, 371 (1986) (allegation of diminution in value of property due to increased traffic on roads and increased demands on public utilities are not "special damages distinct from those of the rest of the community"). Moreover, intervenors' supporting affidavit simply delineated the location, some 0.35 to 0.65 miles from Lloyd's property, of the residence of each named intervenor, but specified no special damages each would allegedly suffer in the event the variances were granted. Because intervenors failed to allege they "would be subject to 'special damages' distinct from the rest of the community," *id.*, the trial court erred in allowing intervenors' motion.

Assuming *arguendo* intervenors properly alleged they would be "aggrieved" by grant of the variances, moreover, the record reveals no evidence which would sustain a finding by the trial court of special damages to which intervenors might be subjected, nor did the trial court's order contain such a finding, merely providing that it appeared the "motion should be allowed." *See Heery v. Zoning Board of Adjustment*, 61 N.C. App. at 614, 300 S.E.2d at 870 ("importantly, the petitioners failed to allege, and the Superior Court failed to find, that petitioners would be subject to 'special damages' distinct from the rest of the community").

In addition to intervenors' supporting affidavit, the record before the trial court included statements to the Board by each individual intervenor. Kevin Foy addressed the procedural requirements of the RCD ordinance and questioned whether Lloyd had demonstrated the requisite financial hardship to qualify for variances. Glenn Parks expressed concern about the effect of granting a variance on the

community's open space and indicated his property was presently subject to existing sewage problems associated with flooding. However, Parks proffered no explanation as to how grant of the variances might affect pre-existing flooding problems. Mark Broadwell also related previous flooding problems, but again presented no exposition of any relationship between this problem and grant of the variances. Mario Pieroni expressed concern that granting the variances would "set[] a dangerous precedent." Valerie Broadwell (Broadwell) addressed the effect of the proposed variances on urban wildlife, pollution buffers, and noise buffers—damages common to the community in general as opposed to being distinctly those of Broadwell. Moreover, Broadwell conceded she had no knowledge of the effect of the proposed construction on the noise buffer and presented no specific information as to the effect of granting the variances on pollution buffers.

In short, nothing in the statements of intervenors to the Board evidenced a diminishment of property values or revealed an assertion of special damages "distinct from the rest of the community." We likewise have reviewed the remainder of the record and find no evidence which would sustain a finding intervenors would be subject to special damages if the variances were granted.

Based on the foregoing, that portion of the trial court's 11 October 1995 order determining "[i]ntervenors have standing to appear in this matter" is vacated, see Concerned Citizens v. Bd. of Adjustment of Asheville, 94 N.C. App. at 367, 380 S.E.2d at 132, and intervenors purported appeal is dismissed, N.C.R. App. P. 3; see Culton v. Culton, 327 N.C. 624, 625-26, 398 S.E.2d 323, 324-25 (1990) (only aggrieved party may appeal from order or judgment).

Order allowing intervention vacated; appeal by intervenors dismissed.

Judges WYNN and McGEE concur.