BARBARA GLOVER MANGUM, TERRY OVERTON, DEBORAH OVERTON, AND VAN EURE, PETITIONERS-APPELLEES v. RALEIGH BOARD OF ADJUSTMENT, PRS PARTNERS, LLC, AND RPS HOLDINGS, LLC, RESPONDENTS-APPELLANTS

No. COA06-1587

(Filed 20 November 2007)

**1. Zoning— special use permit—adjoining property owners— not aggrieved parties with standing**

Adjoining property owners were not aggrieved parties with standing to contest the decision of a city board of adjustment granting a special use permit to respondents for an adult entertainment establishment based on provisions of the city code because those provisions do not purport to address the issue of standing to contest a zoning decision; the right to petition a trial court for a writ of certiorari is governed by N.C.G.S. § 160A-388(e2); and mere ownership of adjoining property is insufficient to establish standing.

**2. Zoning— aggrieved parties—special use permit—adult entertainment establishment—adjoining property owners—failure to allege and prove special damages**

Allegations by petitioners, adjoining property owners, that an adult establishment would have adverse effects on their properties because of inadequate parking, safety and security concerns, stormwater runoff, trash and noise were insufficient to allege "aggrieved party" status so as to give the petitioners standing to contest the decision of a city board of adjustment granting a special use permit for an adult entertainment establishment where petitioners failed to allege that they would suffer special damages distinct from the rest of the community. Even if petitioners properly alleged aggrieved party status, there was insufficient evidence to support a finding that the values of their properties would decrease as a result of the issuance of the special use permit or that they would suffer special damages distinct from the rest of the community.

Appeal by Respondents from order entered 12 September 2006 by Judge Narley L. Cashwell in Superior Court, Wake County. Heard in the Court of Appeals 22 August 2007.

*Smith Moore LLP, by James L. Gale, David L. York, and Laura M. Loyek, for Petitioners-Appellees.*

*Poyner & Spruill LLP, by Robin Tatum Currin and Keith H. Johnson, for Respondents-Appellants PRS Partners, LLC and RPS Holdings, LLC.*

McGEE, Judge.

PRS Partners, LLC and RPS Holdings, LLC (Respondents) applied to the City of Raleigh Inspections Department on 15 November 2005 for a special use permit to operate a "[Gentlemen's]/Topless Adult Upscale Establishment" at 6713 Mt. Herman Road (the subject property) in Raleigh, North Carolina. The Raleigh Board of Adjustment (the Board) held a hearing on 9 January 2006 regarding issuance of the requested special use permit. At the hearing, Respondents and those in opposition to the requested permit introduced evidence. At the conclusion of the hearing, the Board made numerous findings of fact and conclusions of law. The Board determined Respondents were entitled to a special use permit and the permit was issued.

**MANGUM v. RALEIGH BD. OF ADJUST.**

[187 N.C. App. 253 (2007)]

Barbara Glover Mangum, Terry Overton, Deborah Overton, and Van Eure (collectively Petitioners) filed a petition for writ of certiorari on 24 March 2006 in Superior Court, Wake County. Petitioner Barbara Glover Mangum alleged she owned Triangle Equipment Company, Inc. and the real property on which it was located, which was immediately adjacent to the subject property. Petitioners Terry and Deborah Overton alleged they owned several properties immediately adjacent to the subject property, and that they owned Triangle Coatings, Inc., which was located on one of their properties. Petitioner Van Eure alleged she was the owner of the Angus Barn restaurant, located near the subject property. She further alleged that she, "as well as patrons of the Angus Barn, will travel in close proximity to [the subject property] and will be affected by the proposed use of [the subject property]." Petitioners further alleged in the petition that they, "as adjoining landowners, testified [at the hearing before the Board] regarding the adverse effects the proposed Adult Establishment would have on their properties, including concerns regarding inadequate parking, safety and security, stormwater runoff, trash, and noise."

Respondents filed a motion to dismiss the petition for writ of certiorari for lack of subject matter jurisdiction. Specifically, Respondents argued that Petitioners lacked standing to contest the issuance of the special use permit. In an order entered 12 September 2006, the trial court denied Respondents' motion to dismiss and reversed the Board's decision approving Respondents' application for a special use permit. Respondents appeal.

---

Respondents argue the trial court erred by denying their motion to dismiss Petitioners' writ of certiorari petition for lack of standing. We agree. " 'Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction.' " *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (quoting *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878, *disc. review denied*, 356 N.C. 610, 574 S.E.2d 474 (2002)), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003). A trial court's determination of standing is reviewed *de novo. Id.* at 114, 574 S.E.2d at 51.

Pursuant to N.C. Gen. Stat. § 160A-388(b) (2005), "any person aggrieved" may appeal the decision of a zoning officer to the Board of Adjustment. Further, under N.C. Gen. Stat. § 160A-388(e2) (2005), an "aggrieved party" may appeal a Board of Adjustment decision to su-

perior court by filing a petition for writ of certiorari. Thus, a petitioner will have standing to seek review of the decision of a Board of Adjustment if the petitioner is an "aggrieved party" within the meaning of the statute. *See Heery v. Zoning Board of Adjustment*, 61 N.C. App. 612, 613, 300 S.E.2d 869, 870 (1983). However, if a petitioner is not an aggrieved party, and therefore does not have standing, this Court does not have subject matter jurisdiction. *See Sarda v. City/Cty. of Durham Bd. of Adjust.*, 156 N.C. App. 213, 575 S.E.2d 829 (2003) (dismissing an appeal for lack of subject matter jurisdiction because the petitioners lacked standing).

We must determine whether Petitioners are aggrieved parties with standing to contest the decision of the Board. "An aggrieved party is one who either shows a legal interest in the property affected or, in the case of a 'nearby property owner, [shows] some special damage, distinct from the rest of the community, amounting to a reduction in value of [that owner's] property.' " *Lloyd v. Town of Chapel Hill*, 127 N.C. App. 347, 350, 489 S.E.2d 898, 900 (1997) (quoting *Allen v. City of Burlington Bd. of Adjustment*, 100 N.C. App. 615, 618, 397 S.E.2d 657, 659 (1990) (citation omitted)). Further, the damages that are alleged to result from the zoning action cannot be too general; the petitioner must present evidence that it "will or has suffered . . . pecuniary loss to its property" as a result of the zoning action. *Kentallen, Inc. v. Town of Hillsborough*, 110 N.C. App. 767, 770, 431 S.E.2d 231, 233 (1993) (holding that "evidence presented before the Board, that the requested construction would increase '[t]he negative impact' on the petitioner's property and 'would not be visually attractive,' is much too general[.]").

Moreover, a petitioner cannot merely allege aggrieved party status. "The petition must . . . allege 'the manner in which the value or enjoyment of [the] [petitioner's] land has been or will be adversely affected.' " *Id.* at 769, 431 S.E.2d at 232 (quoting 3 Edward H. Ziegler, Jr., *Rathkopf's The Law of Zoning and Planning* § 43.04[1] (1993) (footnote omitted)). "Once the petitioner's aggrieved status is properly put in issue, the trial court must, based on the evidence presented, determine whether an injury 'has resulted or will result from [the] zoning action.' " *Id.* at 770, 431 S.E.2d at 232 (quoting *Rathkopf's* at 43.04[1]).

[1] Respondents first argue the trial court erred by relieving Petitioners of their burden to show they were aggrieved parties. We agree. In its order, the trial court specifically concluded:

1. By its express terms, the Raleigh City Code protects "adjacent properties" by requiring the Board to make findings regarding the secondary effects of the proposed Adult Establishment on such adjacent properties. The Code also specifically recognizes that Adult Establishments "because of their very nature" have "serious objectionable operational characteristics" that extend into surrounding neighborhoods. § 10-2144(3), (4).

2. Petitioners therefore have standing based on the ordinance itself, and the line of cases which otherwise require proof of distinct "special damages" in order to have standing to challenge a quasi-judicial zoning decision pursuant to N.C. Gen. Stat. [§] 160A-388(e2) [is] not apposite. Because Petitioners, as adjacent and nearby landowners, fall within the class of property-owners expressly granted protection by the Raleigh City Code, this Court finds that Petitioners have standing to seek review of the Board's decision granting the Special Use Permit.

We hold that the trial court's reliance on the Raleigh City Code was misplaced. The Raleigh City Code provisions relied upon by the trial court do not purport to address the issue of standing to contest a zoning decision. Rather, the right to petition a trial court for a writ of certiorari is governed by statute. *See* N.C.G.S. § 160A-388(e2). Moreover, the trial court's ruling contravenes longstanding precedent that mere ownership of adjoining property is insufficient to establish a petitioner's standing. *See Sarda,* 156 N.C. App. at 215, 575 S.E.2d at 831 (holding that "[the] [p]etitioners' mere averment that they own land in the immediate vicinity of the property for which the special use permit is sought . . . is insufficient to confer standing upon them."); *Kentallen,* 110 N.C. App. at 770, 431 S.E.2d at 233 (holding that "[the petitioner's] allegation that it is the 'owner of adjoining property' does not satisfy the pleading requirement[.]"). Therefore, the trial court erred by concluding that Petitioners had standing based solely on provisions of the Raleigh City Code.

[2] Respondents next argue the trial court erred by concluding, in the alternative, that "the Petition and the Certified Record include allegations regarding increased traffic, increased water runoff, parking, and safety concerns sufficient to establish 'special damages' for purposes of standing." We agree.

In the present case, Petitioners did not sufficiently allege "aggrieved party" status. In the petition for writ of certiorari, Petitioner Barbara Glover Mangum alleged she was the owner of real property

·immediately adjacent to the subject property, and that she owned Triangle Equipment Company, Inc., situated on her real property. Petitioners Terry and Deborah Overton alleged they owned several properties immediately adjacent to the subject property, and that they owned Triangle Coatings, Inc., situated on one of their properties. Petitioner Van Eure alleged she was the owner of the Angus Barn restaurant, located near the subject property. She also alleged that she, "as well as patrons of the Angus Barn, will travel in close proximity to [the subject property] and will be affected by the proposed use of [the subject property]." These allegations are insufficient to establish Petitioners' standing as they merely allege ownership of adjacent or nearby property. *See Sarda*, 156 N.C. App. at 215, 575 S.E.2d at 831; *Kentallen*, 110 N.C. App. at 770, 431 S.E.2d at 233.

Petitioners did allege in the petition for writ of certiorari that "Petitioners, as adjacent landowners, testified regarding the adverse effects the proposed Adult Establishment would have on their properties, including concerns regarding inadequate parking, safety and security, stormwater runoff, trash, and noise." However, Petitioners did not allege that they would suffer " 'special damages distinct from the rest of the community.' " *Lloyd*, 127 N.C. App. at 351, 489 S.E.2d at 900 (citations omitted).

In *Lloyd*, the intervenors alleged ownership of property in the vicinity of the property for which the variances were sought and also alleged that the variances would have a material adverse effect upon the value of the intervenors' properties. *Id.* However, because the petitioners did not specify how the granting of the variances at issue would cause them special damages, distinct from the rest of the community, our Court held that the trial court erred by granting the intervenors' motion to intervene. *Id.* at 351, 489 S.E.2d at 900-01. Moreover, in *Heery*, the petitioners alleged they would suffer a decline in the value of their properties by the granting of the requested special use permit. *Heery*, 61 N.C. App. at 613, 300 S.E.2d at 870. However, "the petitioners failed to allege, and the Superior Court failed to find, that [the] petitioners would be subject to 'special damages' distinct from the rest of the community. Without a claim of special damages, the petitioners are not 'aggrieved' persons . . . and they have no standing." *Id.* at 614, 300 S.E.2d at 870.

As in *Lloyd* and *Heery*, Petitioners in the present case failed to allege how they would be subject to special damages, distinct from the rest of the community, by the granting of the special use

permit. Accordingly, Petitioners failed to plead sufficient special damages, and the trial court erred by denying Respondents' motion to dismiss.

Even assuming, *arguendo*, that Petitioners properly alleged aggrieved party status, we hold there was insufficient evidence to support a finding that Petitioners would sustain special damages. Furthermore, the trial court failed to make such a finding, merely determining that Petitioners had stated "allegations" sufficient to establish special damages. *See Lloyd*, 127 N.C. App. at 351, 489 S.E.2d at 901 (stating: "Assuming *arguendo* [the] intervenors properly alleged they would be 'aggrieved' by grant of the variances, . . . the record reveals no evidence which would sustain a finding by the trial court of special damages to which [the] intervenors might be subjected, nor did the trial court's order contain such a finding, merely providing that it appeared the 'motion should be allowed.' ").

In the present case, LaMarr Bunn (Mr. Bunn), a licensed landscape architect and a licensed real estate broker, testified for Petitioners at the hearing before the Board. Mr. Bunn testified that the proposed parking plans on the subject property would be inadequate, and that "[p]atrons of the proposed use will park not only along Mt. Herman Road, but also in the lots and driveways of the adjacent businesses which then would have to care for the trash and other items being strewn on other business properties." Mr. Bunn further testified that the stormwater plans for the subject property were inadequate.

Mr. Bunn also testified that he had conducted a review of 911 calls from two businesses similar to Respondents' proposed use. There had been over 400 calls made to 911 from those two businesses over the previous year, while no 911 calls had been made from the subject property. The Board allowed this testimony, and Mr. Bunn's testimony regarding traffic and transportation issues, as the bases for Mr. Bunn's opinions regarding valuation of Petitioners' properties. However, Mr. Bunn did not testify that the value of any of Petitioners' properties would decrease as a result of the proposed use on the subject property. Rather, Mr. Bunn merely raised the concerns cited above. The only testimony regarding a decrease in property value as a result of the special use permit concerned a property not owned by Petitioners. Mr. Bunn testified that the proposed use would decrease the value of a fifteen-acre lot across the street from the subject property, which property was not owned by Petitioners.

Petitioner Barbara Glover Mangum testified she was "concerned" about the parking plans. Specifically, she testified that

> [i]f even one vehicle were to park on that street, because it is such a narrow little street with no shoulders, if one car parks between a proposed club and my property, tractor trailers bringing my equipment in, my construction equipment in at night, would not be able to make the turn into my driveway.

She also testified that her property was lower in elevation than the subject property, and "that cause[d] [her] great concerns of flooding and water issues." She further stated that if Respondents were granted the special use permit, she would be "scare[d]" and "frighten[ed]" for the safety and security of the people on Mt. Herman Road. Petitioner Terry Overton testified he was concerned about security on his property:

> I've been in this particular area for 28 years in this same building and I've only had 2 calls in 28 years for any kind of problem in my business whatsoever. And I don't think that would remain the case should I have an influx of more people coming in. That's my personal opinion.

In *Lloyd*, although the intervenors testified about the adverse effects of the granting of the variance, our Court held that "nothing in the statements of [the] intervenors to the Board evidenced a diminishment of property values or revealed an assertion of special damages 'distinct from the rest of the community.' " *Lloyd*, 127 N.C. App. at 352, 489 S.E.2d at 901. In *Kentallen*, our Court held that evidence that "the requested construction would increase '[t]he negative impact' on the petitioner's property and 'would not be visually attractive,' [was] much too general to support a finding that [the petitioner] will or has suffered any pecuniary loss to its property due to the issuance of the permit." *Kentallen*, 110 N.C. App. at 770, 431 S.E.2d at 233.

Likewise, in the present case, Petitioners did not present any evidence that the value of their properties would decrease as a result of the issuance of the special use permit, or that they would suffer damages distinct from the rest of the community. *See Lloyd*, 127 N.C. App. at 352, 489 S.E.2d at 901. Moreover, the evidence presented by Petitioners at the hearing was too general and speculative to support a finding that "an injury 'has resulted or will result from [the] zoning action.' " *See Kentallen*, 110 N.C. App. at 770, 431 S.E.2d at 232 (quot-

ing *Rathkopfs* at § 43.04[1]). Accordingly, we hold the trial court erred by denying Respondents' motion to dismiss.

The order of the trial court is vacated, and the matter is remanded to the trial court for entry of an order (1) dismissing the petition for writ of certiorari filed 24 March 2006; (2) vacating the trial court's order entered 12 September 2006; and (3) reinstating the special use permit issued by the Board. *See Kentallen*, 110 N.C. App. at 770, 431 S.E.2d at 233; *Heery*, 61 N.C. App. at 614, 300 S.E.2d at 871. Because we determine that Petitioners lacked standing to contest the issuance of the special use permit, we do not address Respondents' remaining arguments.

Vacated and remanded.

Judges STEPHENS and SMITH concur.