BARBARA GLOVER MANGUM, TERRY OVERTON, DEBORAH OVERTON, AND VAN EURE, PETITIONERS v. RALEIGH BOARD OF ADJUSTMENT, PRS PARTNERS, LLC, AND RPS HOLDINGS, LLC, RESPONDENTS

No. 613PA07

(Filed 12 December 2008)

**Zoning— special use permit—challenge by adjacent property owners**

Property owners adjacent to or in close proximity to a proposed adult establishment had standing to challenge the special use permit for that establishment where they demonstrated special damages separate and apart from damages the community

**MANGUM v. RALEIGH BD. OF ADJUST.**

[362 N.C. 640 (2008)]

might suffer. While proximity alone does not provide standing, it bears on the question, and the petitioners here testified to adverse effects including parking problems, security, stormwater runoff, littering, and noise.

Justice TIMMONS-GOODSON dissenting.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 187 N.C. App. 253, 652 S.E.2d 731 (2007), vacating and remanding an order entered on 12 September 2006 by Judge Narley L. Cashwell in Superior Court, Wake County. Heard in the Supreme Court 14 October 2008.

*Smith Moore LLP, by James L. Gale, David L. York, and Elizabeth Brooks Scherer, for petitioner-appellants.*

*Poyner & Spruill LLP, by Robin Tatum Currin, for respondent-appellee RPS Holdings, LLC.*

BRADY, Justice.

In this case we determine the circumstances under which an adjacent property owner or property owner in close proximity has standing to challenge a Board of Adjustment's grant of a Special Use Permit. We hold that petitioners have standing to challenge the Raleigh Board of Adjustment's issuance of a Special Use Permit to PRS Partners, LLC and RPS Holdings, LLC. Thus, we reverse the decision of the Court of Appeals holding otherwise and remand this case to that court for determination of issues not reached by that court.

## FACTUAL AND PROCEDURAL BACKGROUND

On 15 November 2005, PRS Partners, LLC and RPS Holdings, LLC (respondents) filed an application for a Special Use Permit for an adult establishment with the Raleigh Board of Adjustment (the Board). Respondents sought the Special Use Permit in order to operate a proposed business at 6713 Mt. Herman Road, Raleigh (the subject property). Petitioner Barbara Glover Mangum is the owner of a parcel of land directly adjacent to the subject property, and at this location she operates Triangle Equipment Company, Inc., a retail business selling compact construction, yard, and garden equipment. Petitioners Terry and Deborah Overton own three properties directly adjacent to the subject property, upon which they operate Triangle Coatings, Inc. Petitioner Ms. Van Eure is the owner of the Angus Barn, a prominent Raleigh restaurant, which is not located immedi-

ately adjacent to the subject property, but access to the subject property is along a narrow roadway that passes by the restaurant. A hearing was held by the Board on 9 January 2006, during which petitioners presented evidence concerning the probability of increased traffic, increased water runoff, parking and safety concerns, and adverse secondary effects on their businesses if the Board granted the Special Use Permit.

On 24 February 2006, the Board served notice of its approval of the Special Use Permit application, and petitioners appealed the Board's decision to Superior Court, Wake County, by Petition for Writ of Certiorari on 24 March 2006. On 13 April 2006, respondents filed a motion to dismiss the petition, asserting that petitioners lacked standing to challenge the Board's decision pursuant to N.C.G.S. § 160A-388(e2). On 12 September 2006, the trial court denied respondents' motion to dismiss and reversed the Board's decision approving the Special Use Permit. Respondents appealed to the Court of Appeals, which, on 20 November 2007, held that petitioners lacked standing to challenge the Board's decision and vacated and remanded the decision of the trial court. Petitioners timely petitioned for discretionary review by this Court, and we allowed the petition on 11 June 2008. We now reverse the decision of the Court of Appeals.

## ANALYSIS

The sole issue before us is whether petitioners have standing to challenge the issuance of the Special Use Permit. As a general matter, the North Carolina Constitution confers standing on those who suffer harm: "All courts shall be open; [and] every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law . . . ." N.C. Const. art. I, § 18.

> The rationale of [the standing rule] is that only one with a genuine grievance, one personally injured by a statute, can be trusted to battle the issue. "The 'gist of the question of standing' is whether the party seeking relief has 'alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation[s] of issues upon which the court so largely depends for illumination of difficult constitutional questions.' "

*Stanley v. Dep't of Conservation & Dev.*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973) (quoting *Flast v. Cohen*, 392 U.S. 83, 99 (1968) (alteration in original) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)). It is not necessary that a party demonstrate that injury has already

MANGUM v. RALEIGH BD. OF ADJUST.

[362 N.C. 640 (2008)]

occurred, but a showing of "immediate or threatened injury" will suffice for purposes of standing. *River Birch Assocs. v. City of Raleigh*, 326 N.C. 100, 129, 388 S.E.2d 538, 555 (1990) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 342 (1977)); *see also Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472 (1982).

Specifically, in contests concerning zoning decisions, this Court has stated:

> The mere fact that one's proposed lawful use of his own land will diminish the value of adjoining or nearby lands of another does not give to such other person a standing to maintain an action, or other legal proceeding, to prevent such use. If, however, the proposed use is unlawful, as where it is prohibited by a valid zoning ordinance, the owner of adjoining or nearby lands, who will sustain special damage from the proposed use through a reduction in the value of his own property, does have a standing to maintain such proceeding.

*Jackson v. Guilford Cty. Bd. of Adjust.*, 275 N.C. 155, 161, 166 S.E.2d 78, 82 (1969) (citations omitted). Additionally,

> [i]f . . . that which purports to be an amendment permitting a use of property forbidden by the original ordinance is, itself, invalid, the prohibition upon the use remains in effect. In that event, the owner of other land, who will be specially damaged by such proposed use, has standing to maintain a proceeding in the courts to prevent it.

*Id.* at 161, 166 S.E.2d at 83 (citations omitted).[1] It is undisputed that defendants' proposed use of the land is unlawful unless they are issued a Special Use Permit. Moreover, the General Assembly has provided that "*[e]very* decision of the board [of adjustment] shall be subject to review by the superior court by proceedings in the nature of certiorari." N.C.G.S. § 160A-388(e2) (2007) (emphasis added).

In the instant case, the trial court found petitioners had standing based upon the terms of the Raleigh City Code[2] and alternatively that

---

1. The validity of the Board's decision is not presented to us in this appeal.

2. The trial court wrote: "[T]he Raleigh City Code protects 'adjacent properties' by requiring the Board to make findings regarding the secondary effects of the proposed Adult Establishment on such adjacent properties. The Code also specifically recognizes that Adult Establishments 'because of their very nature' have 'serious objectionable operational characteristics' that extend into surrounding neighborhoods."

**MANGUM v. RALEIGH BD. OF ADJUST.**

[362 N.C. 640 (2008)]

petitioners had made sufficient allegations to establish "special damages" for purposes of standing through their testimony regarding "increased traffic, increased water runoff, parking, and safety concerns." The Court of Appeals reversed the trial court, finding the allegations and evidence presented inadequate to show the special damages required to challenge the issuance of the permit. *Mangum v. Raleigh Bd. of Adjust.*, 187 N.C. App. 253, ——, 652 S.E.2d 731, 736 (2007). We disagree with the conclusion of the Court of Appeals and hold that the allegations and evidence presented by petitioners in regards to the "increased traffic, increased water runoff, parking, and safety concerns," as well as the secondary adverse effects on petitioners' businesses, were sufficient special damages to give standing to petitioners to challenge the issuance of the permit.

In our de novo review of a motion to dismiss for lack of standing, we view the allegations as true and the supporting record in the light most favorable to the non-moving party. *See Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 477, 495 S.E.2d 711, 713, *cert denied*, 525 U.S. 1016 (1998). We also note that North Carolina is a notice pleading jurisdiction, and as a general rule, there is no particular formulation that must be included in a complaint or filing in order to invoke jurisdiction or provide notice of the subject of the suit to the opposing party. *See Mangum v. Surles*, 281 N.C. 91, 99, 187 S.E.2d 697, 702 (1972) ("[I]t is the essence of the Rules of Civil Procedure that decisions be had on the merits and not avoided on the basis of mere technicalities." (citation omitted)). To deny a party his day in court because of his "imprecision with the pen" would "elevate form over substance" and run contrary to notions of fundamental fairness. *See Pyco Supply Co., Inc. v. Am. Centennial Ins. Co.*, 321 N.C. 435, 443, 364 S.E.2d 380, 385 (1988).

In their petition for writ of certiorari filed in the superior court, petitioners alleged that they either owned property immediately adjacent to or in close proximity to the subject property. While this assertion, in and of itself, is insufficient to grant standing, it does bear some weight on the issue of whether the complaining party has suffered or will suffer special damages distinct from those damages to the public at large. Moreover, petitioners testified during the Board hearing that granting the Special Use Permit would have adverse effects on their property, including problems related to parking, safety, security, stormwater runoff, littering, and noise.

Because we hold that petitioners have standing under our prior case law regardless of the terms of the Raleigh City Code, we express no opinion whether the terms of the Code would be sufficient to grant petitioners standing.

MANGUM v. RALEIGH BD. OF ADJUST.

[362 N.C. 640 (2008)]

For instance, LaMarr Bunn, a licensed landscape architect and licensed real estate broker, testified at the Board hearing on behalf of petitioners in opposition to the permit. He testified about the value of surrounding properties, the large number of 911 calls made concerning similar businesses in Raleigh, his concerns about a proposed sign for the business, and the lack of stormwater retention areas. Petitioner Mangum testified at the Board hearing concerning parking at the subject property. According to her calculations, if the proposed business had full occupancy, each vehicle in the parking lot would need to have transported at least four persons on average.[3] She testified that this lack of adequate parking at respondents' property could result in patrons of the proposed business parking their vehicles at her adjacent site. Moreover, Mangum testified that if even one vehicle parked on Mt. Herman Road, tractor trailers would be unable to bring equipment to her business at night. Mangum expressed concerns over stormwater runoff, as her property was "sitting much lower than the property in question." She further testified regarding her concerns about safety, litter, vandalism, and other damage to her property. These concerns were based in part on problems Mangum had at a property in South Carolina that is immediately adjacent to an adult establishment.

Petitioner Terry Overton expressed his concerns about security on his adjacent property, stormwater runoff onto his lower-situated property, garbage, and parking overflow. Petitioner Eure testified regarding her safety concerns for her customers and employees stemming from traffic and regarding anticipated secondary adverse effects upon her business. Petitioners' allegations were reiterated in the petition filed in the superior court.

These allegations and testimony were sufficient to demonstrate special damages to these property owners separate and apart from the damage the community as a whole might suffer. We cannot agree with respondent's arguments and the dissent's contention that allegations of vandalism, safety concerns, littering, trespass, and parking overflow from the proposed business to adjacent or nearby lots fail to establish that the value of petitioners' properties would be adversely affected or that petitioners would be unable to enjoy the

---

3. According to LaMarr Bunn's testimony, the public space of the proposed building is 6,800 square feet, which requires 140 parking spots and equates to 560 seats in the facility. Thus, the proposed plans would provide one parking spot for every four seats in the establishment. While it was Mangum's opinion that this was inadequate, the plan is within the standards specified by § 10-2081 of the Raleigh City Code.

use of their properties. Accordingly, the decision of the Court of Appeals that petitioners lack standing must be reversed.

## CONCLUSION

Because petitioners' allegations and testimony demonstrated the existence of special damages if the Special Use Permit were granted, petitioners have standing to challenge the issuance of the permit, and the Court of Appeals erred in holding otherwise. Accordingly, the decision of the Court of Appeals is reversed, and the case is remanded to that court for determination of the remaining issues raised by respondents but not addressed by the Court of Appeals.

REVERSED AND REMANDED.

Justice TIMMONS-GOODSON dissenting.

Because the majority misapplies the longstanding precedent of this Court and unnecessarily relaxes the requirements for standing, I respectfully dissent.

After correctly quoting the rule on standing announced by this Court in *Jackson v. Guilford County Board of Adjustment*, the majority then disregards North Carolina's stringent requirements for standing in favor of the less consistent rule of some other jurisdictions. In North Carolina, adjacent and nearby property owners have standing to appeal from quasi-judicial zoning decisions if the owners will sustain special damages, distinct from the rest of the community, amounting to a reduction in property values. *Jackson*, 275 N.C. 155, 161, 166 S.E.2d 78, 82 (1969) (citations omitted). While some states have held that evidence of increases in traffic, population, and noise may alone suffice to show special damages and grant standing, *see, e.g., Lynch v. Gates*, 433 Pa. 531, 534-35, 252 A.2d 633, 634-35 (1969) (increases in noise, population density, traffic, and loss of light and air), in North Carolina, a reduction in property value has been an essential element of standing for nearly forty years, *see, e.g., Cty. of Lancaster v. Mecklenburg Cty.*, 334 N.C. 496, 503 n.4, 434 S.E.2d 604, 610 n.4 (1993) (citing Court of Appeals decisions which rely on *Jackson* for the rule that adjoining property owners must present evidence of a reduction in property values).

Under the well-established rule of *Jackson*, a petitioner must allege, and the trial court must find, that the adjacent or nearby property owner will suffer special damages amounting to a reduction in property value. *See, e.g., Smith v. Forsyth Cty. Bd. of Adjust.*, 186

N.C. App. 651, 654, 652 S.E.2d 355, 358 (2007) (holding that petitioner lacked standing when she failed to allege that the zoning decisions at issue had decreased the value of her property or would do so in the future). Additionally, the record must contain evidence sufficient to sustain a finding that the petitioner will in fact suffer a diminution in property value. *See, e.g., Lloyd v. Town of Chapel Hill*, 127 N.C. App. 347, 351, 489 S.E.2d 898, 901 (1997) (no standing when the record did not contain sufficient evidence to sustain a finding that the petitioner would suffer a diminution in property value); *Heery v. Town of Highlands Zoning Bd. of Adjust.*, 61 N.C. App. 612, 614, 300 S.E.2d 869, 870 (1983).

North Carolina's more stringent rule on standing is appropriate in light of the fundamental right of an owner to lawfully use and enjoy his property without undue restrictions. *See Wise v. Harrington Grove Cmty. Ass'n*, 357 N.C. 396, 401, 584 S.E.2d 731, 736 (2003) (" 'Every person owning property has the right to make any lawful use of it he sees fit, and restrictions sought to be imposed on that right must be carefully examined . . . .' " (quoting *Vance S. Harrington & Co. v. Renner*, 236 N.C. 321, 324, 72 S.E.2d 838, 840 (1952) (alteration in original))); *cf. Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach*, 274 N.C. 362, 372, 163 S.E.2d 363, 370 (1968) (stating in an action for damages for the taking of private property for public use without paying just compensation that "the right of private property is a fundamental, material, inherent and inalienable right"). The rule is also consistent with N.C.G.S. § 160A-388(e2), which restricts standing in appeals from quasi-judicial decisions in zoning cases to "aggrieved part[ies]." N.C.G.S. § 160A-388(e2) (2007). Finally, the rule lends itself to objective, consistent, and fair application, gives property owners predictability, and discourages frivolous litigation.

Turning to the facts of this case, respondents seek a Special Use Permit to open an adult establishment in compliance with the Raleigh City Code. The proposed establishment would be located near the end of Mount Herman Road, a small, dead-end street in an industrial zoning district. The adjacent uses on Mount Herman Road include a heavy equipment rental company, a commercial steel company, a lumber company, an electrical transformer plant, and a fifteen acre vacant parcel. Petitioners are the owners of adjacent properties, plus an owner of property that is located at least one-half mile from the site of the proposed establishment and on a major highway that does not connect to Mount Herman Road.

In their petition for writ of certiorari filed in the superior court, petitioners alleged that they testified at the hearing before the Board of Adjustment regarding the adverse effects of the proposed adult establishment on their respective adjacent and nearby properties. However, petitioners did not allege that they would suffer special damages amounting to a reduction in property values. Thus, the petition for writ of certiorari failed to allege standing under North Carolina law. *See Jackson*, 275 N.C. at 161, 166 S.E.2d at 82.

In its order denying respondents' motion to dismiss for lack of subject matter jurisdiction, the trial court erroneously concluded that petitioners have standing based on the applicable provisions of the Raleigh City Code. The trial court incorrectly concluded that the line of cases which require proof of special damages was inapposite and that petitioners did not need to show special damages amounting to a proven diminution in property values. The trial court added that, in the alternative, petitioners' allegations regarding increased traffic, increased water runoff, parking, and safety concerns alone were sufficient to establish special damages for standing purposes. Notably, the trial court's order lacks a finding that petitioners would experience a diminution in property values.

The majority refrains from addressing the errors in the trial court's order by stating in a footnote that its holding is based on our prior case law and not the Raleigh City Code. However, the majority has failed to cite any cases which hold that allegations regarding increased traffic, increased water runoff, parking, and safety concerns alone are sufficient to establish special damages for standing. Our prior case law indicates that adjacent and nearby property owners have standing to appeal in quasi-judicial zoning cases only if they would suffer special damages amounting to a diminution in property values.

The record of the hearing before the Board of Adjustment clearly shows that petitioners have failed to present evidence that they would suffer a diminution in property values. Mr. Bunn testified at the hearing that inadequate parking, increased traffic, water runoff, and safety issues would adversely affect the adjacent properties. However, Mr. Bunn gave no opinion regarding whether these concerns would diminish the values of the properties belonging to petitioners. Petitioners Mrs. Mangum, Mr. Overton, and Ms. Eure testified regarding their concerns, which were largely based on the assumptions that the provisions of the Raleigh City Code pertaining to parking were inadequate or that respondents would fail to comply with

the conditions in the Special Use Permit. However, no witness testified that the proposed establishment would diminish the values of petitioners' properties. The only valuation evidence presented by petitioners concerned a fifteen acre vacant parcel, owned by a nonparty to this action.

The evidence presented before the Board of Adjustment demonstrates that, contrary to the majority's suggestion, petitioners' lack of standing in this case goes beyond a mere "imprecision with the pen." Testimony regarding the effects of increased traffic, increased water runoff, parking, and safety concerns, without evidence that these factors would in fact diminish petitioners' property values, is simply too general to support standing under North Carolina law. Thus, because petitioners have failed to satisfy the requirements for standing, I would affirm the decision of the Court of Appeals.