## McMILLAN v. TOWN OF TRYON

[200 N.C. App. 282 (2009)]

PHILLIP McMILLAN, JANET CONNELL, TRACY TURNER, CARROLL C. TURNER, DALE DRAKE, REGINALD DRAKE, BOBBIE WILSON, J. BRUCE WILSON, MARGARET WILSON, GEORGIA C. MARX, MELVIN MARX, JOHN EARL FOY, RUTH P. FOY, STEVE K. PERRY, KIPP COX, NANCY MADAR, PAUL MADAR, JOAN R. POST, KARL A. WILLIAMS, BARBARA A. WILLIAMS, GUNTHAM M. GERSCH, STANLEY BRIGHTWELL, ALAN LURIA, PAT RYAN, EARL A. BETTINGER, J. RANDALL GROBE, Petitioners v. TOWN OF TRYON, an incorporated municipality of the State of North Carolina, TOWN COUNCIL for the Town of Tryon, and the TRYON COUNTRY CLUB, INC., Respondents and defendants, Respondents

No. COA08-642

(Filed 6 October 2009)

### Zoning— standing—special damages

The superior court erroneously dismissed for lack of standing petitioners' appeal from the Town Council's approval to rezone property to allow further development. There was testimony sufficient to establish petitioners' standing with special damages resulting from water runoff, septic tank pollution, increased noise, increased traffic on narrow roadways, and danger to petitioners and neighborhood children on the roadways.

Appeal by petitioners from an order entered 14 February 2008 by Judge J. Marlene Hyatt in Polk County Superior Court. Heard in the Court of Appeals 3 December 2008.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Craig D. Justus; and Whitmire & Beeker, by Angela Beeker, for petitioners-appellants.*

*Parker Poe Adams & Bernstein L.L.P., by Anthony Fox, Benjamin R. Sullivan and Benn A. Brewington, III, for respondents-appellees.*

JACKSON, Judge.

Phillip McMillan ("McMillan"), Janet Connell, Tracy Turner, Carol C. Turner, Dale Drake, Reginald Drake ("Drake"), Bobbie Wilson, J. Bruce Wilson ("Wilson"), Georgia C. Marx, Melvin Marx, John Earl Foy, Ruth P. Foy, Steve K. Perry, Kipp Cox, Nancy Madar, Paul Madar, Joan R. Post, Karl A. Williams, Barbara A. Williams, Guntham M. Gersch, Stanley Brightwell, Alan Luria, Pat Ryan, Earl A. Bettinger, and J. Randall Grobe (collectively, "petitioners") appeal from an order entered by the superior court on 14 February 2008 dismissing their appeal upon a writ of *certiorari* to the trial court to review

actions taken by the Town of Tryon ("Town"), Town Council for the Town of Tryon ("Town Council"), and the Tryon Country Club, Inc. ("Country Club") (collectively, "respondents"). For the reasons set forth below, we reverse and remand.

The instant appeal concerns the Town's re-zoning of approximately 126 acres of Country Club property—all of which is located within the Town's municipal boundaries or subject to the Town's zoning authority—to allow the development of sixty new residential homes.

On 17 October 2006, the Town Council denied a proposal to re-zone the Country Club property. After waiting the required three months, the proposal was resubmitted with additional information. On 20 March 2007, the Town Council conducted a hearing to consider re-zoning approximately 126 acres of the Country Club property from "P-1" and "R-3" zones to an "R-4 Conditional Use Zone" such that it would be possible to build a mixture of single-family units as well as duplexes in a portion of the re-zoned area upon the issuance of a Conditional Use Permit. A P-1 district provides for open spaces, and an R-3 zone is among the Town's most restrictive residential districts and allows the development of single-family, detached dwelling units along with other residentially related facilities which serve the residents within the district. An R-4 Conditional Use Zone is less restrictive and allows a mixture of multi-family dwelling units on individual lots.

The Country Club and developers from dewSouth Communities ("dewSouth") planned to develop approximately sixty new residential homes and a new tennis and swimming facility for the Country Club on approximately fifty-one of the 126 re-zoned acres. The sixty new residential units were to be comprised of forty single family residences and ten duplexes. Without re-zoning the R-3 district to an R-4 Conditional Use Zone and issuing a Conditional Use Permit, the duplexes would be an unlawful use of the land.

After hearing sworn testimony from Town residents; Country Club residents; petitioners McMillan, Drake, and Wilson; architects and other members of the dewSouth development team, the Town Council unanimously voted in favor of re-zoning a portion of the Country Club property to an R-4 Conditional Use Zone. The Town Council also unanimously voted to approve the associated Conditional Use Permit necessary to allow the proposed development of the re-zoned property.

On 20 April 2007, petitioners filed a complaint[1] and petition for writ of *certiorari* seeking review of the 20 March 2007 hearing. On 11 June 2007, the superior court granted the petition. On 10 July 2007, respondents filed an answer and raised as a defense petitioners' purported lack of standing. On 11 July 2007, the parties submitted to the superior court the record of the Town Council's proceedings at the 20 March 2007 hearing. On 19 December 2007, petitioners filed a motion to supplement the record on appeal with (1) a transcript of the Town Council's 20 March 2007 hearing, (2) petitioners' affidavits attesting to adverse pecuniary effects on their properties if the proposed development were to occur pursuant to the Conditional Use Permit, and (3) minutes from the Town Council's 17 October 2006 meeting during which a similar re-zoning proposal had been considered.

On 9 January 2008, petitioners' motion came on for hearing, and on 14 February 2008, the trial court entered an order (1) granting petitioners' motion to supplement the record with a transcript of the Town Council's 20 March 2007 hearing, (2) denying petitioners' motion to supplement the record with affidavits of adverse pecuniary effects resulting from the decisions to re-zone and grant a Conditional Use Permit, (3) denying petitioners' motion to supplement the record with minutes from the Town Council's 17 October 2006 meeting, and (4) dismissing petitioners' appeal for lack of subject matter jurisdiction because petitioners' had failed to demonstrate that they had standing to bring the appeal. From the superior court's dismissal of their appeal for lack of standing, petitioners appeal to this Court.

On appeal, petitioners argue that the superior court erred by dismissing their appeal for lack of standing. We agree.

We conduct a "de novo review of a motion to dismiss for lack of standing[;] we view the allegations as true and the supporting record in the light most favorable to the non-moving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008) (citing *Stone v. N.C. Dep't of Labor*, 347 N.C. 473, 477, 495 S.E.2d 711, 713, *cert. denied*, 525 U.S. 1016, 142 L. Ed. 2d 449 (1998)).

North Carolina General Statutes, section 160A-381, subsection (c) allows review by the superior court in the nature of *certiorari* of a decision by a city council or planning board to issue a conditional

---

1. Issues related to petitioners' complaint are not considered on this appeal, but are addressed in a related appeal filed contemporaneously herewith with our file number 08-1253.

use permit. N.C. Gen. Stat. § 160A-381(c) (2007). However, section 160A-381, subsection (c) is subject to North Carolina General Statutes, section 160A-388. *Id.* Section 160A-388 sets forth the requirement, *inter alia*, that an aggrieved party bring the action. *See* N.C. Gen. Stat. § 160A-388(b) and (e2) (2007).

In *Jackson v. Guilford County Bd. of Adjustment*, 275 N.C. 155, 166 S.E.2d 78 (1969), our Supreme Court explained the standing requirements for challenging a zoning amendment:

> [t]he mere fact that one's proposed lawful use of his own land will diminish the value of adjoining or nearby lands of another does not give to such other person a standing to maintain an action, or other legal proceeding, to prevent such use. . . . If, however, the proposed use is unlawful, as where it is prohibited by a valid zoning ordinance, the owner of adjoining or nearby lands, who will sustain special damage from the proposed use through a reduction in the value of his own property, does have a standing to maintain such proceeding.

*Jackson*, 275 N.C. at 161, 166 S.E.2d at 82 (internal citations omitted). The Court further explained that the prohibited use of land remains unlawful without a valid zoning ordinance amendment. *Jackson*, 275 N.C. at 161, 166 S.E.2d at 83 (citations omitted).

In *Mangum*, our Supreme Court recently interpreted the rules set forth above and noted that "[i]t is undisputed that defendants' proposed use of the land is unlawful unless they are issued a Special Use Permit." *Mangum*, 362 N.C. at 643, 669 S.E.2d at 282. The Court held that the petitioners' allegations in their petition for writ of *certiorari* as well as the evidence presented "in regards to the 'increased traffic, increased water runoff, parking, and safety concerns,' as well as the secondary adverse effects on petitioners' businesses, were sufficient special damages to give standing to petitioners to challenge the issuance of the permit." *Mangum*, 362 N.C. at 644, 669 S.E.2d at 282-83.

The Court explained that the "petitioners alleged that they either owned property immediately adjacent to or in close proximity to the subject property" and that, while such allegations standing alone are insufficient, proximity to the property that is the subject of a variance "bears some weight" on determining whether the petitioner has suffered or will suffer special damages necessary for standing. *Mangum*, 362 N.C. at 644, 669 S.E.2d at 283. The Court then detailed the peti-

tioners' further allegations and testimony before the Board of Adjustment relating to the "vandalism, safety concerns, littering, trespass, and parking overflow from the proposed business to adjacent or nearby lots" that would be exacerbated by the Board of Adjustment's decision to grant a variance. *Mangum*, 362 N.C. at 645-46, 669 S.E.2d at 283-84. The Court concluded that petitioners' had demonstrated likely adverse effects on the petitioners' property values and use of their property sufficient to allege standing sufficient to survive a motion to dismiss. *Id.*

In the case *sub judice*, petitioners' expressly alleged that

[p]etitioners are property owners whose property lies adjacent to, within the neighborhood surrounding, or within the vicinity of the Property [that is subject to a conditional use permit], and therefore Petitioners have a specific personal and legal interest in the matter and are directly and adversely affected by the Legislative Decision of the Town of Tryon, by and through its Town Council on March 30, 2007 with respect to the Property. Petitioners will suffer special damages separate and distinct from the rest of the properties lying within the County of Polk and/or the Town of Tryon, if the Quasi-judicial Decision referenced hereinabove and hereinbelow are allowed to stand (including but not limited to diminution in property values), and are therefore persons aggrieved within the meaning of N.C.G.S. § 160A-388[].

Petitioners based the foregoing allegation in substantial part upon testimony given by McMillan at the 20 March 2007 hearing. Having solicited speaking time from other petitioners, McMillan testified in opposition to the re-zoning and Conditional Use Permit in relevant part as follows:

This change of zoning proposal will facilitate the sale and removal of substantially all of the [C]lub's natural area, and probably replace the natural area with roads, driveways, rooftops, lawns and septic systems. All of these greatly increase the water runoff and the—and/or the pollution.

. . . .

We talked about infrastructure problems. Country Club Road needs to be widened. . . . I've got some pictures in the little booklet that [has been] passed out to you, and it shows a picture of a school bus coming down the road, and a school bus is eight feet wide, and there are plenty of areas where the lane entering the

Tryon—into the Tryon Country Club Road [which] is only seven feet wide. So do the math. . . . When I see a child walking or riding his bike to the [C]lub, I take a moment to pray that he gets there without getting hit by a car. The residents of the area know better than to walk the road. At times, there's not even enough room on the side of the road to step off of the road, because you'd be stepping right into a ditch. So you can't even get out of the way of a car that's coming. Adults know better, but kids, especially with this new wonderful swimming pool and tennis courts and all, they think that we know what we're doing, and so they just stay on the road and they assume that we'll not hit them. But in the case of this road, it's not an option.

. . . .

We also talked about lifestyle problems. Approximately 85 percent of the neighborhood does not want the zoning changed—the zoning changed, more noise, dangerous traffic, too many units in the neighborhood, unsightly—completely changes the character of the [C]lub and the neighborhood.

. . . .

[A]ccording to the long-time local residents, there's a number of natural springs in the building site. This will particularly cause problems with septic (inaudible) use.

. . . .

I believe that we have shown that this project is potentially detrimental to public health: pollution, unsafe roads; detrimental to the general welfare of the neighborhood: the property owners don't want it; and for the same reason, does not enhance the quality of life in the neighborhood.

As in *Mangum*, it is undisputed that dewSouth's proposed development will be unlawful without an amendment to the Town's zoning ordinances and the issuance of a Conditional Use Permit. Furthermore, in conjunction with the allegations of proximity contained in the petition, McMillan's testimony is sufficient to establish petitioners' standing with special damages resulting from water runoff, septic tank pollution, increased noise, increased traffic on narrow roadways, and the danger to petitioners and neighborhood children on the roadways—many of the same concerns our Supreme Court recently found to be persuasive in *Mangum. See Mangum*, 362 N.C. at 644-45, 669 S.E.2d at 282-83 (listing, *inter alia*, increased water

runoff, insufficient parking space, and danger to customers and employees from increased traffic). Accordingly, upon our *de novo* review of the lower court's conclusion that petitioners lacked standing, taking petitioners' allegations as true, viewing the facts in the light most favorable to them, and with due regard for the Supreme Court's recent precedent in *Mangum*, we hold that the lower court erroneously dismissed petitioners' action for lack of standing.

Because the sole issue before this Court is whether petitioners had standing, and because we have resolved that issue in petitioners' favor, we do not address petitioners' questions presented as to whether the trial court erred by denying petitioners' motions to supplement the record with (1) affidavits attesting the pecuniary impact on their properties of the proposed development, and (2) the minutes of the 17 October 2006 meeting.

> It is no part of the function of the courts, in the exercise of the judicial power vested in them by the Constitution, to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter.

*Poore v. Poore,* 201 N.C. 791, 792, 161 S.E. 532, 533 (1931) (citations omitted).

For the foregoing reasons, we hold that the superior court erred in dismissing petitioners' appeal pursuant to a writ of *certiorari* for lack of standing and we remand the matter to that court.

Reversed and remanded.

Judges HUNTER and ELMORE concur.