BARBARA GLOVER MANGUM, TERRY OVERTON, DEBORAH OVERTON, AND VAN EURE, Petitioners-Appellees v. RALEIGH BOARD OF ADJUSTMENT, PRS PARTNERS, LLC, AND RPS HOLDINGS, LLC, Respondents-Appellants

No. COA06-1587-2

(Filed 7 April 2009)

**1. Zoning— special use permit—distance from adult business—variance not needed**

A variance was not needed to obtain a special use permit for an adult business where the ordinance prohibited an adult establishment within a 2,000 foot radius of a speciality school and there was a karate school within that distance if the measurement was to the closest point of each lot. While the city code expressly states that the entire property of the adult establishment is to be included in measuring distances, it does not contain a similar provision for protected places. The proper measure should have been from subject property to the part of the karate school regularly used in furtherance of instruction, in this case a rented space within a building that was outside the 2,000 foot radius.

**2. Zoning— board of adjustment—delegation of authority—compliance with conditions**

The trial court erred by concluding that a board of adjustment improperly delegated its authority to determine the effect on adjoining landowners of secondary impacts from a special use permit for an adult business. There is a necessary interplay between a board of adjustment and other governmental bodies for both the issuance of special use permits and the assurance of compliance.

**3. Zoning— special use permit—board of adjustment findings—competent supporting evidence**

The trial court erred by ruling that a board of adjustment did not make the necessary findings to support its issuance of a special use permit for an adult business. There was competent evidence in the record to support the board's findings concerning the secondary impacts on adjoining landowners, and the trial court was without authority to conduct a de novo review.

Appeal by Respondents from order entered 12 September 2006 by Judge Narley L. Cashwell in Superior Court, Wake County. Heard in the Court of Appeals originally on 22 August 2007, and opinion filed

on 20 November 2007. Remanded to the Court of Appeals for consideration of additional issues by order of the North Carolina Supreme Court on 12 December 2008.

> *Smith Moore LLP, by James L. Gale, David L. York, and Laura M. Loyek, for Petitioners-Appellees.*

> *Poyner & Spruill LLP, by Robin Tatum Currin and Keith H. Johnson, for Respondents-Appellants PRS Partners, LLC and RPS Holdings, LLC.*

McGEE, Judge.

PRS Partners, LLC and RPS Holdings, LLC (Respondents) applied to the City of Raleigh Inspections Department on 15 November 2005 for a special use permit to operate a "[Gentlemen's]/Topless Adult Upscale Establishment" at 6713 Mt. Herman Road (the subject property) in Raleigh, North Carolina. The Raleigh Board of Adjustment (the Board of Adjustment) held a hearing on 9 January 2006 regarding issuance of the requested special use permit. At the hearing, both Respondents and those in opposition to the requested permit introduced evidence. At the conclusion of the hearing, the Board of Adjustment made numerous findings of fact and conclusions of law. The Board of Adjustment determined Respondents were entitled to a special use permit and the permit was issued.

Barbara Glover Mangum, Terry Overton, Deborah Overton, and Van Eure (collectively Petitioners) filed a petition for writ of certiorari on 24 March 2006 in Superior Court, Wake County. Petitioners alleged in the petition that they, "as adjacent landowners, testified [at the hearing before the Board of Adjustment] regarding the adverse effects [the subject property] would have on their properties, including concerns regarding inadequate parking, safety and security, stormwater runoff, trash, and noise."

Respondents filed a motion to dismiss the petition for writ of certiorari for lack of subject matter jurisdiction. Specifically, Respondents argued that Petitioners lacked standing to contest the issuance of the special use permit. In an order entered 12 September 2006, the trial court denied Respondents' motion to dismiss and reversed the Board of Adjustment's decision approving Respondents' application for a special use permit. Respondents appealed. Our Court held Petitioners lacked standing and vacated the order of the trial court. *Mangum v. Raleigh Bd. of Adjustment*, 187 N.C. App. 253, 652 S.E.2d 731 (2007) (*Mangum I*). Our Supreme Court held that

Petitioners did have standing to bring this action, and reversed the holding of our Court, remanding for consideration of arguments on appeal not addressed in *Mangum I. Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 669 S.E.2d 279 (2008).

## I.

[1] In Respondents' second argument on appeal, they contend the trial court erred in affirming the Board of Adjustment's decision that Respondents needed a variance in order to obtain a special use permit for the subject property. We agree.

The issuance of a special use permit for adult establishments in Raleigh is controlled by the Raleigh City Code (the Code).

> In performing its functions and duties under this chapter, the Board of Adjustment following the submittal of a plan containing the information required in § 10-2132.1(b) and after making the necessary findings is authorized to issue special use permits to allow the enumerated buildings, uses, and designs in the districts specified in subsection (b) below. The districts referred to herein apply to general use and conditional use districts unless the applicable conditional use district ordinance specifically states otherwise.

Raleigh City Code § 10-2144(a) (2008). Subsection (b) enumerates the requirements for issuing a special use permit for adult establishments.

> To permit an adult establishment in industrial districts, Shopping Center, Neighborhood Business, Business Zone, and Thoroughfare Districts after the [Board of Adjustment] finds that the evidence presented at the hearing establishes each of the following:
>
> (1) Off-street parking.
>
> . . . .
>
> (2) Advertisements.
>
> . . . .
>
> (3) Overconcentration.
>
> . . . .
>
> (4) Residential proximity.
>
> No adult establishment is located within a two thousand (2,000) foot radius (determined by a straight line and not street distance)

of any . . . specialty school. . . . Adult establishments, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when they are located near a residential zoning district or certain other districts which permit residential uses. Special regulation of these establishments is necessary to insure that these adverse effects will not contribute to a downgrading or blighting of surrounding residential districts or certain other districts which permit residential uses, unless otherwise[] determined by subparagraph (5) below.

(5) Variances.

The Board of Adjustment shall vary the radius requirements in subparagraph (3) and (4) above when it finds [certain enumerated provisions].

(6) The proposed use will not adversely impact public services and facilities such as parking, traffic, police, etc., and that the secondary effects of such uses will not adversely impact on adjacent properties. The secondary effects would include but not be limited to noise, light, stormwater runoff, parking, pedestrian circulation and safety.

Raleigh City Code § 10-2144(b) (2008). "Specialty school," as included in section 10-2144(b)(4), is defined as: "A place of regular sessions of teaching for avocational activities including, but not limited to, baton twirling, charm and finishing, gymnastics, language and martial arts. Dance and music studios are not considered specialty schools." Raleigh City Code § 10-2002 (2008).

The Board of Adjustment determined that a karate school was located within 2,000 feet of Respondents' property line, and therefore a variance was required for the issuance of a special use permit for the subject property. Respondents argue the karate school is not located within 2,000 feet of their property line.

When the Superior Court reviews a Board of Adjustment decision:

If a petitioner contends the Board's decision was based on an error of law, "de novo" review is proper. However, if the petitioner contends the Board's decision was not supported by the evidence or was arbitrary and capricious, then the reviewing court must apply the "whole record" test.

. . . .

Upon further appeal to this Court, we must examine "the trial court's order for error of law" just as with any other civil case.

The process has been described as a twofold task: (1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the [trial] court did so properly.

*Sun Suites Holdings, L.L.C. v. Board of Aldermen of Garner*, 139 N.C. App. 269, 272-73, 533 S.E.2d 525, 527-28 (2000) (citations omitted).

Pursuant to Raleigh City Code, section 10-2002, "Definitions": "All words and terms . . . have their commonly accepted and ordinary meaning unless they are specifically defined in this Code or the context in which they are used clearly indicates to the contrary." Further, "[w]hen vagueness or ambiguity is found to exist as to the meaning of any word or term used . . . any appropriate cannon [sic], maxim, principle or other technical rule of interpretations or construction used by the courts of this state may be employed to resolve vagueness and ambiguity in language." Raleigh City Code § 10-2002.

In the case before us, the Board of Adjustment interpreted the 2,000-foot buffer requirement between adult establishments and specialty schools to run between the closest points of the lots upon which each establishment is situated. By this calculation, the Board of Adjustment determined that the distance between Respondents' subject property and the karate school was less than 2,000 feet, and therefore a variance under section 10-2144(b)(5) was required.

Section 10-2144 of the Code expressly addresses the method of calculating distances from adult establishments: "Annotation: Adult establishment. When computing distances the term 'adult establishment' includes the entire property such as parking area used for required off-street parking." The full context of this sentence makes the meaning of "entire property" vague. If "entire property" is meant to be interpreted as the entire lot upon which the adult establishment is situated, then that meaning could have easily been specifically expressed. The language "such as parking area used for required off-street parking" invites a reasonable interpretation that something less than the entire lot—i.e., only those portions of the lot actually used for operation of the adult establishment—is included in the meaning of "entire property." Because "zoning and subdivision regulations are in derogation of private property, such provisions should be liberally

construed in favor of the owner." *River Birch Assoc. v. Raleigh,* 326 N.C. 100, 110, 388 S.E.2d 538, 544 (1990) (citation omitted).

Assuming *arguendo* that the Board of Adjustment was correct in interpreting the term "adult establishment" to include the entire lot upon which the adult establishment sits, we cannot find, on the specific facts of this case, that the "specialty school" (the karate school), should also be interpreted to include the entire lot upon which it sits. Specialty school is defined in part as a "place of regular sessions of teaching for avocational activities. . . ." The plain meaning of this language limits the location of a specialty school to the location where the regular teaching sessions take place. There is nothing in this definition to suggest the bounds of a specialty school extend beyond the areas in which regular teaching occurs.

The public policy underlying the establishment of the 2,000-foot buffer is in no way offended by this interpretation. In this case, the karate school is situated within a rented space in a building. The owner of the karate school rents the space, and owns no part of the building or the lot upon which the karate school sits. There is no evidence in the record that karate instruction takes place anywhere other than in the space rented for that purpose. The physical structure of the karate school itself, and thus its patrons, are more than 2,000 feet away from the subject property. Had the lot upon which the karate school sits been smaller, or a different shape, there would have been no material change concerning the effect of the subject property on the karate school, yet the Board of Adjustment would have determined that no section 10-2144(b)(5) variance was required. Conversely, under the Board of Adjustment's interpretation, assuming the karate school sat upon a very large lot, the subject property could be, for example, two or more miles distant, and the Board of Adjustment would have required a variance. We do not believe such arbitrary results were intended by the enactment of the relevant portions of the Code.

Finally, according to the Code, where ambiguity exists, we are to look to the accepted rules of interpretation and construction. *See also Westminster Homes, Inc. v. Town of Cary Zoning Bd. of Adjustment,* 354 N.C. 298, 303, 554 S.E.2d 634, 638 (2001) (Rules of statutory interpretation apply when construing municipal zoning ordinances.). " 'Intent is determined . . . by examining (i) language, (ii) spirit, and (iii) goal of the ordinance. Since zoning ordinances are in derogation of common-law property rights, limitations and restrictions not clearly within the scope of the language employed in such ordinances

should be excluded from the operation thereof.' " *Id.* at 304, 554 S.E.2d at 638 (citation omitted). One of the long-standing rules of interpretation and construction in this state is *expressio unius est exclusio alterius,* the expression of one thing is the exclusion of another. *Baker v. Martin,* 330 N.C. 331, 337, 410 S.E.2d 887, 890-91 (1991); *Board of Drainage Comm'rs v. Credle,* 182 N.C. 442, 445, 109 S.E. 88, 90 (1921). In clarifying how distances from adult establishments are to be calculated, section 10-2144 of the Code expressly states that the "entire property" of the adult establishment is to be included, but this section contains no similar provision for protected places contained in section 10-2144(b)(4), such as the karate school. Had the City's intent been to include the "entire property" upon which any specialty school or other protected establishment sits for the purposes of section 10-2144(b)(4), it should have been included in section 10-2144. Because section 10-2144 expressly expands the definition of adult establishment beyond the physical structure itself, but remains silent concerning specialty schools and other protected establishments, we must construe the ordinance as limiting this more expansive definition of "property" to adult establishments.

We hold that the Board of Adjustment erred in its calculation of the distance between the subject property and the karate school and, on the facts before us, the proper measure for the 2,000-foot buffer required in section 10-2144(b)(4) is from the "entire property" of the subject property to that part of the karate school—meaning those areas of the building regularly used by the karate school in furtherance of its instruction—closest to the subject property. Because evidence shows the building in which the karate school is located is more than 2,000 feet from the "entire property" of the subject property, even assuming *arguendo* that includes the entire lot upon which the facilities of the subject property would sit, we hold that to obtain a special use permit, Respondents did not require any variance under section 10-2144(b)(5). This holding is limited to the facts of this case, and should not be interpreted to apply to facts not before us. For example, a different analysis might be necessary for a fact situation where a specialty school conducts "regular sessions of teaching" outside its building, on a portion of the lot upon which it sits, that falls within 2,000 feet of an adult establishment.

II.

[2] In their fourth argument, Respondents contend that the trial court erred in determining the Board of Adjustment improperly delegated its authority. We agree.

MANGUM v. RALEIGH BD. OF ADJUST.

[196 N.C. App. 249 (2009)]

The trial court concluded that the Board of Adjustment violated the mandate of section 10-2144(b)(6) in that it improperly delegated its quasi-judicial authority to make ultimate determinations concerning whether secondary impacts deriving from the issuance of a special use permit to Respondents would adversely affect adjacent property owners. *See County of Lancaster v. Mecklenburg County*, 334 N.C. 496, 508-09, 434 S.E.2d 604, 613 (1993). The trial court concluded that by "conditioning its grant of the Special Use Permit upon the subsequent determination by administrative personnel that [Respondents'] plans comply with minimum Code requirements," the Board of Adjustment improperly abdicated its quasi-judicial obligations.

> A special use permit "is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist."

> "When an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record."

*Harts Book Stores, Inc. v. Raleigh*, 53 N.C. App. 753, 757, 281 S.E.2d 761, 763-64 (1981) (finding the petitioner presented substantial evidence that special use permit should issue for its adult book store where zoning inspector testified: " 'This particular location meets all the criteria as set out in the Code.' " *Id.* at 757-58, 281 S.E.2d at 764 (citation omitted)).

The order of the trial court does not indicate any specific ways in which the Board of Adjustment abdicated its responsibilities. Petitioners argue that the Board of Adjustment abdicated its duty in making the following three findings of fact: (1) Respondents "submitted a proposed plot plan that either has or will conform to the parking requirements established in the Raleigh City Code for the proposed use." (2) Respondents "will be required to comply with all applicable provisions of the Code in order to obtain the special use permit." (3) That the "development will meet all stormwater runoff, landscape and parking requirements of the Raleigh City Code before a special use permit can be issued." These findings of fact, by their express language, relate conditions precedent before the Board of Adjustment would issue the special use permit. These findings of fact

do not constitute the issuance of a special use permit, and therefore cannot support Petitioners' argument that the Board of Adjustment delegated its responsibilities in issuing the special use permit.

The relevant conclusions of law of the Board of Adjustment, based in part upon the challenged findings of fact, include a conclusion that a special use permit *should* be issued to Respondents. The actual special use permit issued to Respondents includes the following relevant provisions: (1) "The parking, landscaping and lighting plan will comply with [Respondents'] Exhibits 11, 12 and 13 which are incorporated herein by reference." (2) "Customers of [the subject property] must park on-site. [Respondents] shall be responsible for preventing customers from parking on Mt. Herman Road or on property . . . not owned or leased by [Respondents]." (3) This "approval is contingent upon . . . the approval of a . . . plot plan[.]" (4) "All decisions of the [Board of Adjustment] are subject to further review under Code Section 10-2141(d) regardless of whether the Board puts any restrictions on the request. Your special use permit is subject to review . . . for violations . . . of either any provision of Chapter 10 of the Raleigh City Code or an imposed limiting condition[.]"

Respondents testified that they "would have to meet with water quality regulations, water quantity regulations, nitrogen controls, and it was determined at this time the preference was to use underground storage that would be located under the parking facility and a variety of other measures around the periphery."

The special use permit is by its terms contingent upon approval of the required plans and limiting conditions to assure conformity with the Board of Adjustment's conditions, such as those related to stormwater runoff, and the requirements of the Code. The Board retains authority to review its decision and modify or rescind the special use permit if it determines that Respondents are not in compliance.

Further, section 10-2144(a) of the Code states: "the [Board of Adjustment] following the submittal of a plan containing the information required in § 10-2132.1(b) and after making the necessary findings is authorized to issue special use permits[.]" Section 10-2132.1(b) outlines the data to be included in plot plans. There is no mention in this section of the Code concerning stormwater runoff. Therefore, Respondents' plot plan was not required to show the method by which they would handle stormwater runoff prior to the issuance of the special use permit. In fact, there is nothing in section 10-2144 that

mandates Respondents prove their plan will comply with Code requirements for stormwater runoff prior to the issuance of a special use permit by the Board of Adjustment. The only provision in section 10-2144 relating specifically to stormwater runoff is 10-2144(b)(6), which requires the Board of Adjustment to find evidence that issuance of the special use permit will not adversely impact adjacent properties by secondary effects such as stormwater runoff. Respondents will have to pass all inspections and comply with all relevant provisions of the Code before they will be allowed to open for business. Assuring compliance with building codes, however, is not the responsibility of the Board of Adjustment. The Board of Adjustment found as fact that Respondents' development plan must show compliance with Code requirements for stormwater runoff before the special use permit would issue. We conclude this finding evinces the Board of Adjustment's discretionary judgment that compliance with Code stormwater runoff requirements would be sufficient to avoid adverse impact to the adjoining properties.

We do not find this kind of provisional grant to be an improper delegation of the authority of the Board of Adjustment. There will be no definitive way to determine whether Respondents have complied with all the requirements of the special use permit until all work has been completed. Until that time, the Board of Adjustment retains the authority to review, amend, or withdraw the special use permit to assure that the mandates of the Code and the Board of Adjustment's own limiting conditions are being met. Further, section 10-2081, involving off-street parking; section 10-2132.1(b), involving plot plans; and section 10-9023, involving stormwater runoff, all require the involvement of the Department of Inspections for approvals, issuance of permits, and assurance of compliance. There is a necessary interplay between the Board of Adjustment and other governmental bodies for both the issuance of special use permits and assurance of compliance.

III.

[3] In their fifth argument, Respondents contend that the trial court erred in ruling that the Board of Adjustment did not make the necessary findings of fact to support its issuance of the special use permit. We agree.

> [The Board of Adjustment's] findings of fact are binding if supported by substantial competent evidence presented at the hearing. The reviewing court may not substitute its own judgment for

that of the body when the record contains competent and sub-stantial evidence supporting the findings indicated by the quasi-judicial body, even though conflicting evidence in the record would have allowed the court to reach a contrary finding if pro-ceeding *de novo*.

*Tate Terrace Realty Investors v. Currituck County*, 127 N.C. App. 212, 218, 488 S.E.2d 845, 849 (1997) (citations omitted). The task of this Court is to determine if the trial court properly applied the cor-rect standard of review. *Sun Suites*, 139 N.C. App. at 273, 533 S.E.2d at 528. "Compliance with the requirements of the [Code] ensures that each application for approval of a [special use permit] will be consid-ered on its own merits, and not granted or denied based on improper or irrelevant factors." *Guilford Fin. Servs. v. City of Brevard*, 356 N.C. 655, 576 S.E.2d 325 (2003), *adopting Judge Tyson's dissent in Guilford Fin. Servs., LLC v. City of Brevard*, 150 N.C. App. 1, 10, 563 S.E.2d 27, 33 (2002).

In its order, the trial court specifically ruled that the Board of Adjustment did not make the required findings concerning section 10-2144(b)(6), which requires:

The proposed use will not adversely impact public services and facilities such as parking, traffic, police, etc., and that the sec-ondary effects of such uses will not adversely impact on adjacent properties. The secondary effects would include but not be lim-ited to noise, light, stormwater runoff, parking, pedestrian circu-lation and safety.

The trial court limited its ruling to the "secondary effects" on adjacent properties, and supported its determination by including as findings of fact evidence presented by Petitioners: specifically, testimony from Petitioners regarding the negative impact inadequate parking might have on their properties and businesses, including testimony that a single vehicle parked along the side of Mt. Herman Road could render the road impassable; testimony that their properties would be subject to water runoff from the subject property; testimony that patrons and employees will travel in close proximity to the subject property; and testimony that the subject property would have adverse secondary effects on their businesses.

In its findings of fact, the Board of Adjustment specifically ad-dressed the requirements of section 10-2144(b)(6) of the Code. The Board of Adjustment found the following: (1) that the subject prop-erty would be located on a dead-end road, where the adjacent uses

"include a heavy equipment rental company, a commercial steel company, a lumber company, an electrical transformer plant and a parking and storage facility[;]" (2) that the portion of Mt. Herman Road upon which the subject property would be located is "a destination location, with all access being by vehicular, not pedestrian traffic[;]" (3) that the "development plan will meet all stormwater runoff, landscape and parking requirements of the Raleigh City Code before a special use permit can be issued[;]" (4) that the "hours of operation of the [subject property] would be restricted to evening hours during the week. Most of the visits to [the subject property] will be made during periods that are later than normal peak traffic usages for office, retail and manufacturing uses[;]" (5) that the subject property would comply with Raleigh noise ordinances; (6) that a licensed appraiser studied the impact of other, larger adult establishments in Raleigh, all of which have more residents living within a one-mile radius than the subject property, and "did not find any depreciation in land values" of surrounding properties; and (7) that Respondents would be "required to prohibit [] patrons from parking on [Mt. Herman Road] or on adjacent properties."

We find competent evidence in the record to support these findings of fact, and thus they were binding on the trial court. The trial court was without authority to conduct a *de novo* review of the evidence and base its rulings on the testimony of Petitioners when it is the sole province of the Board of Adjustment to weigh the competent evidence and make determinations of credibility. *See Guilford Fin. Servs.*, 356 N.C. 655, 576 S.E.2d 325, *adopting Judge Tyson's dissent*, 150 N.C. App. at 11, 563 S.E.2d at 34 ("In reviewing the sufficiency and competency of the evidence, this Court determines 'not whether the evidence before the superior court supported that court's order[,] but whether the evidence before the [municipal body] supported [its] action.' "). We hold the Board of Adjustment's findings of fact sufficiently support its conclusion that the subject property would not run afoul of section 10-2144(b)(6) of the Code.

We hold that the trial court erred in reversing the decision of the Board of Adjustment to grant Respondents a special use permit for their subject property. We reverse and remand to the trial court for action consistent with this opinion.

Reversed and remanded.

Judges WYNN and STEPHENS concur.