An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1027

Filed 3 September 2025

N.C. Industrial Commission, No. 21-716264

GORAN DAVIDOVIC, Employee, Plaintiff,

v.

ALLBOUND CARRIER, INC., Alleged Employer, and TOTALLY QUALITY LOGISTICS, INC., LLC (Freight Brokerage Firm), Alleged Statutory Employer, OLD REPUBLIC INSURANCE COMPANY, Carrier (BROADSPIRE, Third-Party Administrator), Defendants.

Appeal by Defendants from opinion and award entered 6 August 2024 by Commissioner Adrian A. Phillips of the North Carolina Industrial Commission. Heard in the Court of Appeals 11 June 2025.

> *Deuterman Law Group, by Zachary B. Marquand and Juliana Vergara Duque, for Plaintiff-Appellee.*

> *Richard T. Granowsky for Defendant-Appellant Allbound Carrier, Inc.*

> *Goodman McGuffey LLP, by Adam E. Whitten, for Defendant-Appellant Total Quality Logistics, LLC.*

GRIFFIN, Judge.

Defendants Total Quality Logistics, LLC ("TQL"), and Allbound Carrier, Inc. ("Allbound"), appeal from an opinion and award issued by the Full Commission ("the

Commission") holding TQL and Allbound liable for Plaintiff Goran Davidovic's injuries sustained in a trucking accident. Defendants appeal raising separate legal issues.

TQL contends the Commission erred by (1) finding Plaintiff is entitled to workers' compensation, holding TQL liable under section 97-19.1(a) of the North Carolina Workers' Compensation Act; and (2) finding the Federal Aviation Administration Authorization Act ("FAAAA") does not pre-empt the North Carolina Workers' Compensation Act for claims levied against freight brokers. Allbound contends the Commission erred by (1) finding section 97-19.1(b) of the North Carolina Workers' Compensation Act does not apply to Allbound; and (2) finding Plaintiff totally incapacitated from earning wages. We hold the Commission did not err.

## I.    Factual and Procedural Background

Plaintiff, originally from Serbia, moved to the United States in November 1977. Plaintiff completed high school and received a two-year training in machinery in Bosnia. In 1999, Plaintiff moved to Thomasville, North Carolina, where he completed truck driving school and obtained a commercial driver's license ("CDL"). In 2004, Plaintiff purchased his first commercial truck and worked for multiple companies as an owner/operator.

In 2013, Plaintiff began transporting goods for Coach Logistics, a company that became Allbound in 2015 or 2016. Instead of working as a company driver, Plaintiff worked as an independent owner/operator for Allbound. Plaintiff drove his own

truck, was paid by the load instead of by the mile, and could choose the loads he wanted to transport. Additionally, once Plaintiff accepted a load, he could choose the route he wanted to take, and he could plan his breaks. Plaintiff annually registered his truck in his name, but Allbound maintained a fuel license, the vehicle's U.S. Department of Transportation ("USDOT") Number, and required Plaintiff to place Allbound signage on the truck.

On 14 June 2018, Plaintiff incorporated his own trucking company, Gogi Transport, Inc. ("Gogi"), and designated himself as the president. On 18 January 2019, the owner of Allbound, Bobby Srbinov, requested Plaintiff sign an independent contractor agreement. Srbinov explained the terms of the contract to Plaintiff in Serbian. The agreement classified Allbound as "carrier" and Gogi as "contractor." The contract expressly provided that "contractor and contractor's workers/drivers [are] not employees of carrier." Gogi agreed to provide Allbound with Plaintiff's truck and all labor needed to operate the vehicle and perform the services contemplated in the contract. Plaintiff reserved the right to use the truck for other motor carriers with Allbound's consent, and Plaintiff was free to "accept or reject any shipment offered by Allbound." Plaintiff testified nothing about his job changed after the creation of Gogi and signing the agreement.

TQL is a transportation broker licensed by the USDOT, Federal Motor Carrier Safety Administration. As a brokerage company, "TQL is authorized by its customers to negotiate and arrange for the transportation of freight with motor carriers." TQL

does not own any trucking equipment or employ any drivers. Rather, TQL coordinates loads that need to be delivered with various trucking companies.

In July 2016, TQL entered into a non-exclusive broker-carrier agreement with Allbound. Under the agreement, TQL could "use the services of [Allbound], on a nonexclusive basis, to pickup, secure, transport and deliver customers' freight." Allbound agreed to only use vehicles and drivers that were licensed and insured under Allbound's name and policies, and Allbound was prohibited from "subcontracting, transferring, leasing, assigning, or interlining the transportation of shipments to any other person or entity without authorization from TQL." TQL was responsible for ensuring "the freight being transported for its customers was delivered to the correct location at the correct time and by the method specified." Allbound was required to follow "all state and federal laws[,]" to "carry the required insurance, including workers' compensation with limits required by applicable state law[,]" and to provide TQL with a certificate of proof of insurance.

TQL did not provide workers' compensation insurance to cover the employees of any carrier with whom it contracted to transport freight, including Allbound. Allbound and Gogi did not carry workers compensation coverage for Plaintiff, and TQL never requested a certificate of proof of insurance from either company.

"As compensation for its services, TQL was paid the difference between what its customers paid for transport of the shipment and the rate it negotiated to pay Allbound for the transportation." "TQL provided 1099 tax forms to Allbound."

- 4 -

In 2020, TQL arranged for Allbound to transport a load of paper chili cups from Innopak in Columbus, Ohio, on 12 March 2020, and deliver it to a Harris Teeter in Greensboro, North Carolina, on 13 March 2020. Allbound then subcontracted the assignment to Plaintiff. On 13 March 2020, while transporting the load, a tire popped on Plaintiff's truck causing him to lose control of the vehicle and drive off an overpass onto the street below. Plaintiff suffered multiple traumatic injuries and was diagnosed with a "T12 burst fracture, traumatic hematoma without loss of consciousness, fracture of the right T11, left T12 and right L1 transverse processes, possible ventral epidural hematoma from T12 through L4, and L1 and L2 superior endplate fractures."

On 5 April 2021, Plaintiff filed a Form 18 Workers' Compensation Claim against Allbound in the North Carolina Industrial Commission ("NCIC"). In response, on 11 May 2021, Allbound filed a Form 61 Denial of Workers' Compensation Claim denying that Plaintiff was an employee of Allbound but rather an employee of Gogi. On 12 July 2021, Plaintiff amended his claim to include TQL. On 2 February 2022, TQL filed a Form 61 Denial of Workers' Compensation Claim denying that an employer-employee relationship existed between Defendants and Plaintiff at the time of the incident. On 5 October 2022, TQL filed an Amended Form 61 asserting that the Federal Aviation Administration Authorization Act ("FAAAA") pre-empted the North Carolina's Workers' Compensation Act for tort claims against freight brokers, precluding them from liability.

Plaintiff requested a hearing with the NCIC, and the NCIC granted Plaintiff's request. On 7 October 2022, Plaintiff's claim came on for hearing before Deputy Commissioner Celeste Harris in Kernersville, NC. At the close of the hearing, Deputy Commissioner Harris entered an order setting deadlines for post-hearing depositions. On 13 February 2023, Deputy Commissioner Harris entered a post-hearing order instructing the parties to submit their contentions and proposed opinions by 15 March 2023.

On 8 June 2023, Deputy Commissioner Harris entered an opinion and award finding TQL liable for Plaintiff's injuries. TQL was ordered to pay for Plaintiff's medical expenses, temporary total disability compensation, and twenty-five percent of Plaintiff's attorney's fees.

On 20 and 21 June 2023, Defendants appealed Deputy Commissioner Harris's opinion and award to the Full Commission. On 21 November 2023, Plaintiff's claim came before the Commission. The Commission "reviewed the prior [o]pinion and [a]ward based upon the record of the proceedings before the Deputy Commissioner," and heard oral arguments of the parties. The Commission considered testimony from Plaintiff; Dr. Beck McAllister, Plaintiff's orthopedic surgeon; Dr. O. Del Curing, a neurosurgeon who evaluated Plaintiff for a determination of future medical needs; Maria Vargas, a vocational consultant who performed a vocational assessment for Plaintiff; and Marc Bostwick, the Risk Manager for TQL. The Commission entered its opinion and award on 6 August 2024. The Commission found both Defendants,

TQL and Allbound, liable for Plaintiff's injuries. Defendants were ordered to provide Plaintiff with all medical treatment reasonably necessary, temporary total disability compensation, and twenty-five percent of Plaintiffs attorney's fees. Defendants timely appeal from the Commission's opinion and award.

## II.    Analysis

Defendants appeal from an opinion and award issued by the Full Commission of the North Carolina Industrial Commission. Under North Carolina law, either party may "appeal from the decision of the Commission to the Court of Appeals for errors of law under the same terms and conditions as govern appeals from the superior court to the Court of Appeals in ordinary civil actions." N.C. Gen. Stat. § 97-86 (2023).

Our Supreme Court has established "(1) the full Commission is the sole judge of the weight and credibility of the evidence, and (2) appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "The Commission's conclusions of law are reviewed *de novo.*" *Medlin v. Weaver Cooke Constr., LCC*, 367 N.C. 414, 423, 760 S.E.2d 732, 738 (2014) (citation and internal marks omitted) (emphasis in original).

Defendants raise separate issues on appeal. We address Defendants' arguments separately.

## A. TQL's Appeal

TQL contends the Commission erred by (1) finding Plaintiff is entitled to workers' compensation, holding TQL liable under section 97.19.1(a); and (2) finding the FAAAA does not pre-empt the North Carolina's Workers' Compensation Act for claims levied against freight brokers.

### 1. Section 97-19.1(a)

TQL contends the Commission erred by finding Plaintiff is entitled to workers' compensation, holding TQL liable under section 97.19.1(a). Specifically, TQL argues Plaintiff is an independent contractor and is not entitled to workers' compensation. Even if Plaintiff were entitled to workers compensation, TQL argues it is not liable under the statute because TQL is a transportation broker, not a principal contractor. Additionally, TQL argues it is shielded from liability under section 97-19.1(b). We disagree.

Section 97-19.1(a) of the Workers' Compensation Act provides the following:

> (a) An individual in the interstate or intrastate carrier industry who operates a truck, tractor, or truck tractor trailer licensed by a governmental motor vehicle regulatory agency may be an employee or an independent contractor under this Article dependent upon the application of the common law test for determining employment status.
>
> Any *principal contractor, intermediate contractor*, or subcontractor, irrespective of whether such contractor regularly employs three or more employees, *who contracts with an individual in the interstate or intrastate carrier industry who operates a truck, tractor, or truck tractor trailer licensed by the United States Department of*

> *Transportation* and *who has not secured the payment of compensation in the manner provided for employers set forth in [section] 97-93* for himself personally and for his employees and subcontractors, if any, *shall be liable as an employer under this Article for the payment of compensation and other benefits* on account of the injury or death *of the independent contractor* and his employees or subcontractors due to an accident arising out of and in the course of the performance of the work covered by such contract.

N.C. Gen. Stat. § 97-19.1(a) (2023).

Here, the Commission found TQL liable as a principal contractor and Allbound liable as an intermediate contractor to Plaintiff, an independent contractor. The Commission reasoned "TQL entered into a contract with Innopak, LLC for the purpose of ensuring the delivery of Innopak's goods." TQL then contracted with "Allbound, an interstate carrier 'who operates a truck, tractor, or truck tractor trailer licensed by the United States Department of Transportation and who has not secured the payment of compensation in the manner provided for employers set forth in section 97-93 for himself personally and for his employees and subcontractors.'" Allbound subsequently "subcontracted the work to Plaintiff, an independent contractor without workers' compensation insurance." Accordingly, both TQL and Allbound were liable under the statute.

TQL disagrees with the Commission's conclusion and first contends Plaintiff is not entitled to workers' compensation because the Commission found that he was an independent contractor. We disagree.

Whether the Commission found Plaintiff to be an independent contractor or employee is inconsequential for the purposes of the statute. In either situation, section 97-19.1(a) provides the principal, intermediate, or subcontractor "shall" be liable as a statutory employer if it contracts with "an individual in the interstate or intrastate carrier industry who [1] operates a truck, tractor, or truck tractor trailer licensed by the United States Department of Transportation and who [2] has not secured the payment of compensation in the manner provided for employers set forth in [section] 97-93[.]" N.C. Gen. Stat. § 97-19.1(a). If the answer is yes to both conditions, the principal, intermediate, or subcontractor is liable "for the payment of compensation and other benefits on account of the injury or death of the *independent contractor* and his employees or subcontractors due to an accident arising out of and in the course of the performance of the work covered by such contract." *Id.* Thus, based on the plain language of the statute, independent contractors are protected, and section 97-19.1(a) is not exclusive to employees. *Id.* Accordingly, TQL's argument that Plaintiff is not entitled to receive workers' compensation because Plaintiff is an independent contractor is without merit. *Id.*

Next, TQL argues even if Plaintiff is entitled to receive workers compensation, TQL is precluded from liability under section 97-19.1(a) because TQL is not a principal contractor, but rather a transportation broker. We disagree.

In *Atiapo v. Goree Logistics, Inc.,* we addressed this issue under similar factual circumstances. 240 N.C. App. 1, 5, 770 S.E.2d 684, 687 (2015). In *Atiapo*, this Court

affirmed a decision of the Industrial Commission holding a licensed transportation broker liable under section 97-19.1(a) as a principal contractor where the broker functioned more as a contractor and the subcontractor did not have the proper insurance. *Id.*

In *Atiapo*, "Owen Thomas, Inc. (Owen Thomas), a licensed transportation broker, entered into a 'Broker-Carrier Agreement' with Goree Logistics, Inc. (Goree)." *Atiapo,* 240 N.C. App. at 2, 770 S.E.2d at 685. Owen Thomas would arrange for the transportation of goods for its clients, and Goree, a motor carrier, would transport the load. *Id.* at 2, 770 S.E.2d at 685–86. "The agreement provided that Goree would exercise full control over the work it performed in transporting the goods, and that Goree would assume responsibility for payment of all taxes, unemployment, and workers' compensation, and other related fees." *Id.* The plaintiff drove a tractor trailer for Goree. *Id.* at 2, 770 S.E.2d at 686. While transporting a delivery for Sunny Ridge Farms, a client of Owen Thomas, the plaintiff was involved in a trucking accident. *Id.* at 2–3, 770 S.E.2d at 686. At the time of the injury, Goree did not carry workers' compensation insurance. *Id.* at 2, 770 S.E.2d at 686.

The plaintiff then filed a workers compensation claim and the Commission found Owen Thomas liable as principal contractor under section 97-19.1(a). *Id.* at 3, 770 S.E.2d at 686. The Commission reasoned that although Owen Thomas was a "federally licensed 'freight broker' authorized by its customers to negotiate and arrange for the transportation of shipments in interstate commerce[,] . . . use of the

word 'broker' [was] a distinction without a difference." *Id.* at 4, 770 S.E.2d at 687 (citation modified). Owen Thomas could "use its own judgment in selecting a carrier for its client," and "retained a portion of what it received for the contract." *Id.* Because Owen Thomas acted more as a principal contractor, and because Goree did not provide workers' compensation insurance, the Commission held Owen Thomas liable under section 97-19.1(a). *Id.*

This Court affirmed the decision of the Commission and explained that Owen Thomas acted as principal contractor based on the following facts:

> Owen Thomas contracted with Sunny Ridge to ship its goods. Owen Thomas was to be paid by Sunny Ridge for this service and would retain any monies not paid to the trucking company it hired. It had discretion in selecting a carrier. Owen Thomas provided 1099 tax forms to Goree. Owen Thomas controlled not only the outcome of the task, namely the delivery of goods, but the method by which the task would be performed, including how frequently Goree would report to Owen Thomas, and specifications on the temperature that would be maintained during transport. Sunny Ridge paid Owen Thomas "for insuring a delivery."

*Id.* at 5, 770 S.E.2d at 687.

Based on these facts, we held the Commission did not err in finding Owen Thomas liable under section 97-19.1(a) because (1) Owen Thomas acted as a contractor; and (2) contracted with Goree, "a subcontractor without workers' compensation insurance coverage[.]" *Id.*

Here, like the facts *Atiapo*, TQL is a federally licensed freight broker functioning as a principal contractor. Like Owen Thomas, TQL contracted with its

client, Innopak, LLC, to transport its goods; "TQL was paid the difference between what its customers paid for transport of the shipment and the rate it negotiated to pay Allbound for the transportation;" TQL had discretion to select a carrier as it entered into a non-exclusive agreement with Allbound; TQL provided 1099 tax forms to Allbound; TQL was responsible for ensuring "the freight being transported for its customers was delivered to the correct location at the correct time and by the method specified;" TQL could arrange specific requirements for the load, such as if refrigeration was required; and could "call Allbound dispatchers, and sometimes drivers, to receive updates on the status and location of goods to be delivered."

Accordingly, similar to *Atiapo*, we hold these findings support the Commission's determination that TQL acted as a principal contractor hired by Innopak for the purpose of ensuring the transportation and delivery of its goods. Moreover, because TQL contracted with Allbound, who did not provide workers compensation insurance, TQL is liable to Plaintiff under section 97-19.1(a).

Lastly, TQL contends section 97-19.1(b) shields TQL from liability. We disagree.

In relevant part, section 97-19.1(b) provides that notwithstanding section 97-19.1(a), a principal, intermediate, or subcontractor shall not be liable under section 97-19.1 if the independent contractor is "an individual licensed by the United States Department of Transportation" and "personally is operating the vehicle solely pursuant to that license." N.C. Gen. Stat. § 97-19.1(b) (2023).

Here, and as discussed at length in the section below, Plaintiff was not individually licensed by the USDOT. Although Plaintiff had a CDL at the time of the crash, Plaintiff was operating the vehicle with a USDOT Number registered to Allbound. Thus, we hold the Commission correctly determined section 97-19.1(b) does not apply.[1]

### 2. *FAAAA*

TQL contends the Commission erred by finding that the FAAAA does not pre-empt North Carolina's Workers' Compensation Act for claims levied against brokers, such as workers' compensation claims. Specifically, TQL argues federal law precludes states from regulating interstate commerce. TQL relies on section 14501(c)(1) - Federal authority over instrastate transportation. 49 U.S.C. § 14501(c)(1). We disagree and hold the Commission did not err.

Section 14501(c)(1) provides the following in relevant part:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a *price, route, or service* of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

---

[1] TQL contends if TQL is held liable for Plaintiff's injuries, Allbound should be required to indemnify TQL. This argument was not raised at trial and cannot be addressed for the first time on appeal. *See* N.C. R. App. P. 10 (2023); *Welch v. Welch,* 288 N.C. App. 627, 630, 886 S.E.2d 921, 923 (2023) ("[W]here a theory argued on appeal is not raised before the trial court, the argument is deemed waived on appeal." (citation and internal marks omitted)).

49 U.S.C. § 14501(c)(1).

TQL cites to several federal cases arguing that "claims seeking to impose liability on freight brokers for contracting with allegedly unsafe or unqualified motor carriers affect brokers' prices, routes, or services and are therefore preempted."

TQL fails to recognize that this Court has already addressed section 14501(c)(1) in relation to North Carolina's workers' compensation insurance requirements, and we are bound by precedent. *See In re Civ. Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."); *In re Fifth Third Bank, Nat. Ass'n*, 216 N.C. App. 482, 488, 716 S.E.2d 850, 855 (2011) ("'North Carolina appellate courts are not bound, as to matters of federal law, by decisions of federal courts other than the United States Supreme Court.'" (quoting *Enoch v. Inman*, 164 N.C. App. 415, 420–21, 596 S.E.2d 361, 365 (2004)).

This Court has expressly held "the federal preemption established in [section] 14501(c)(1) does not apply to [section] 97-19.1, which imposes liability upon those who employ persons or entities that fail to procure required workers' compensation insurance." *Atiapo* 240 N.C. App. at 6, 770 S.E.2d at 688. In reaching this conclusion, we reasoned that North Carolina's workers' compensation insurance requirements are not a regulation of prices, routes, or services. *Atiapo*, 240 N.C. App. at 6, 770 S.E.2d at 688 ("We see no reason why a statute requiring financial responsibility as

to workers' compensation should be considered a regulation of prices, routes, or services."). Moreover, section 14501(c)(2)(A) expressly provides that section 14501(c)(1) does not apply to insurance requirements. 49 U.S.C. § 14501(c)(2)(A).

Additionally, even if the federal statute applied, for the reasons explained in the section above, TQL was not acting as a broker at the time of Plaintiff's injury but rather as a principal contractor. TQL was hired by Innopak, LLC, to ensure the transportation and delivery of its goods. "TQL then contracted its work to Allbound, an interstate carrier 'who operates a truck, tractor, or truck tractor trailer licensed by the United States Department of Transportation and who has not secured the payment of compensation in the manner provided for employers set forth in [section] 97-93 for himself personally and for his employees and subcontractors.'" Allbound then "subcontracted the work to Plaintiff, an independent contractor without workers' compensation insurance." Thus, we hold the Commission properly held TQL liable to Plaintiff as a principal contractor under section 97-19.1(a).

**B. Allbound's Appeal**

Allbound contends the Commission erred by (1) finding section 97.19.1(b) does not apply to Allbound; and (2) in finding Plaintiff totally incapacitated from earning wages.

### 1. *Section 97-19.1(b)*

Allbound contends it should have been precluded from liability under section 97-19.1(b) and the Commission erred in its interpretation of the statute. Specifically,

Allbound argues the Commission erroneously interpreted "an individual licensed by the United States Department of Transportation" under section 97-19.1(b) to refer to a USDOT Number rather than a CDL. We disagree.

"Issues of statutory construction are questions of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the Commission." *In re Appeal of Greens of Pine Glen Ltd.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003).

N.C. Gen. Stat. §97-19.1(b) provides an exemption for contractor liability and states the following:

> Notwithstanding subsection (a) of this section, a principal contractor, intermediate contractor, or subcontractor shall not be liable as an employer under this Article for the payment of compensation on account of the injury or death of the independent contractor if the principal contractor, intermediate contractor, or subcontractor (i) contracts with an independent contractor who is an individual licensed by the United States Department of Transportation and (ii) the independent contractor personally is operating the vehicle solely pursuant to that license.

N.C. Gen. Stat. §97-19.1(b) (2023).

Here, the Commission concluded section 97-19.1(b) does not apply to Allbound because Plaintiff was not an independent contractor who was individually licensed by the USDOT. Although Plaintiff had a CDL at the time of the crash, Plaintiff was operating the vehicle with a USDOT Number registered to Allbound. The

Commission reasoned a CDL is a "state issued license" required to drive a commercial vehicle, but a "[US]DOT number is required to drive a commercial vehicle on interstate routes[.]" "[T]he [US]DOT number in this matter was registered to Allbound . . . [and] Plaintiff was operating his vehicle pursuant to Allbound's [US]DOT license, rather than his own[.]" Accordingly, the Commission concluded section 97-19.1(b) does not apply to Allbound because Plaintiff was not operating the vehicle with his own USDOT number.

Allbound disagrees with the Commission's interpretation of the statute and argues "an individual licensed by the [USDOT][,]" is one who carries a CDL. Because Plaintiff was operating the vehicle pursuant to his own CDL, Allbound argues it is exempt from liability pursuant to section 97-19.1(b). We disagree.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson,* 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001). When interpreting a statute, "[w]e first look to the plain language, as the actual words of the legislature are the clearest manifestation of its intent. Our primary task is to determine legislative intent while giving the language of the statute its natural and ordinary meaning unless the context requires otherwise." *Cohane v. Home Missioners of Am.,* 387 N.C. 1, 7–8, 911 S.E.2d 43, 48 (2025) (citation modified).

Section 97-19.1 was first enacted in 2003 and did not include the exemption stated in section 97-19.1(b). In 2006, the statute was amended to include an exemption from contractor liability where the independent contractor was "(i)

licensed by a governmental motor vehicle regulatory agency and (ii) the independent contractor [was] operating the vehicle pursuant to that license." 2006 N.C. Sess. Laws 26. The statute has since been amended to include the language now relevant to the present case. *See* N.C. Gen. Stat. §97-19.1(b).

A CDL is a state issued commercial driver's license that in North Carolina is issued by the North Carolina Division of Motor Vehicles. N.C. Gen. Stat. § 20-37.12 (2023). In 2006, when section 97-19.1 was amended to incorporate section 97-19.1(b), a CDL would have satisfied the exemption because the North Carolina Division of Motor Vehicles would qualify as "a governmental motor vehicle regulatory agency[.]" *See* 2006 N.C. Sess. Laws 26. However, as discussed above, the statute was later amended and now states "licensed by the United States Department of Transportation[.]" N.C. Gen. Stat. § 97-19.1(b). A USDOT Number is a federal identifier required to operate a commercial vehicle on interstate highways. 49 U.S.C.A. § 31134(a). Without it, drivers are not legally qualified to drive interstate. By the plain language of the statute—"licensed by the United States Department of Transportation"—the legislature clearly intended this to mean a USDOT Number, and not merely a CDL issued by a state governmental agency. N.C. Gen. Stat. § 97-19.1(b).

Moreover, the absence of any reference to a CDL, despite the legislature's ability to include section 97-19.1(b), indicates the legislature did not intend to include it. *See McLaughlin v. Bailey*, 240 N.C. App. 159, 171, 771 S.E.2d 570, 579 (2015)

("The fact that the legislature had the option to include this language, but chose not to, is presumptive evidence that it intended that the provision not encompass such options." (citation and internal marks omitted)); *Mangum v. Raleigh Bd. of Adjustment*, 196 N.C. App. 249, 255, 674 S.E.2d 742, 747 (2009) ("One of the long-standing rules of interpretation and construction in this [S]tate is *expressio unius est exclusio alterius*, the expression of one thing is the exclusion of another." (emphasis in original)).

Moreover, as Plaintiff correctly points out, Allbound's interpretation of section 97-19.1(b) would lead to absurd results. If we were to interpret "an individual licensed by the United States Department of Transportation" to mean an individual with a CDL, this would prevent all independent contractors with a CDL from ever recovering from contractor liability. A CDL is required to operate a vehicle commercially. 49 U.S.C. § 31301. Functionally, this would mean entities who only contract with individuals who do not have a CDL, those who are driving illegally, would not be exempt from contractor liability.

Thus, we hold the Commission did not err in its interpretation of the statute and properly concluded section 97-19.1(b) does not apply to Allbound.

### 2. *Disability*

Allbound contends the Commission erred in finding Plaintiff totally disabled and entitled to temporary disability compensation. Specifically, Allbound argues that because Plaintiff was not an employee or statutory employee under section 97-19.1,

Plaintiff is not eligible for benefits, and Allbound is precluded from liability under the Workers' Compensation Act. Additionally, Allbound argues Plaintiff failed to present competent evidence that he is physically or mentally incapable of work as a consequence of the work-related injury. We disagree.

Having concluded the Commission did not err in its interpretation of section 97-19.1, and Allbound is not precluded from liability on Plaintiff's Workers' Compensation Claim, we address Allbound's argument that Plaintiff presented insufficient evidence to support his disability claim.

Our review is limited to "whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law. This [C]ourt's duty goes no further than to determine whether the record contains any evidence tending to support the finding." *Richardson v. Maxim Healthcare/Allegis Grp.,* 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008) (citation modified).

Disability under the Workers' Compensation Act is defined as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9) (2023). To support a conclusion of disability, the Commission must find the following:

> (1) that [the] plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that [the] plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this

individual's incapacity to earn was caused by [the] plaintiff's injury.

*Hilliard v. Apex Cabinet Co.,* 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982).

The plaintiff carries the burden of proof to show the existence and degree of the disability. *Hall v. Chevrolet Co.,* 263 N.C. 569, 575, 139 S.E.2d 857, 861 (1965). The Commission may consider the following evidence to support its determination: (1) "medical evidence" that the plaintiff is "physically or mentally, as a consequence of the work related injury, incapable of work in any employment;" (2) "evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment;" (3) "evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment;" or (4) "evidence that he has obtained other employment at a wage less than that earned prior to the injury." *Russell v. Lowes Prod. Distribution*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).

Here, after hearing the evidence presented, the Commission concluded that "as a result of [Plaintiff's] compensable back injuries, Plaintiff has been totally incapacitated from earning his pre-injury wages in the same or any other employment beginning March 13, 2020." Accordingly, the Commission determined Plaintiff is entitled to temporary total disability compensation. Contrary to Allbound's contention, this conclusion of law is supported by findings that show the Commission

considered medical evidence that showed the extent of Plaintiff's injuries; the duration of his hospitalization and rehabilitation; post-rehabilitation process; and continued treatment. The Commission heard testimony from Plaintiff and reviewed the reports of several doctors and medical professionals who had treated Plaintiff as a result of his injuries.

The findings are supported by record evidence showing Plaintiff sustained multiple injuries as a result of the incident including several fractures and neurological trauma. While hospitalized, "Plaintiff was also diagnosed with neurogenic bowel and bladder issues, intermittent bowel incontinence, and insomnia." Plaintiff testified "he has constant pain in his spine" and "continues to use a walker for assistance[.]" He lives at home with his son and daughter who assist him with daily tasks such as "preparing meals, cleaning the home, and doing laundry."

Dr. Beck McAllister, an orthopedic surgeon, performed Plaintiff's surgery, and continued to see Plaintiff for post-operation appointments. Dr. McAllister documented Plaintiff had "chronic neuropathic pain and chronic right lower extremity weakness," and that Plaintiff's "neurologic status was likely to be permanent with no further recovery." Dr. McAllister "opined to a reasonable degree of medical certainty that, more likely than not, the motor vehicle incident on March 13, 2020 caused the injuries to Plaintiff's back." He testified "Plaintiff reached maximum medical improvement as of March 25, 2021, and that Plaintiff's right lower

extremity weakness would hamper his ability to do a job." He also stated, "it was unlikely that Plaintiff would make further neurological recovery" and that "Plaintiff needs long-term pain management or physical management and rehabilitation services." Further, Dr. McAllister opined "Plaintiff could not return to driving trucks due to the documented incoordination and weakness in Plaintiff's right leg."

Plaintiff was also evaluated by Dr. O. Del Curling, a board-certified neurosurgeon, for a determination of future medical needs. Dr. Curling "opined to a reasonable degree of medical certainty, more likely than not, that the motor vehicle incident of March 13, 2020, caused the injuries to Plaintiff's back, as well as Plaintiff's hip pain and urological issues, which followed his back injury." Dr. Curling explained Plaintiff's recovery process would be extensive and that "Plaintiff would not be capable of performing his previous job as a truck driver."

Maria Vargas, a vocational consultant and certified rehabilitation counselor, performed a vocational assessment for Plaintiff. After meeting with Plaintiff and reviewing his medical records, Vargas "opined that 'given the extensive nature of Plaintiff's disability and the fact that he actually needs home care to perform tasks, that he would not be able to return to his prior work or any type of gainful employment.'"

Based on these findings, supported by competent evidence, we hold the findings support the Commission's conclusions of law that as a result of the incident Plaintiff "has been totally incapacitated from earning his pre-injury wages in the

same or any other employment beginning 13 March 2020" and Plaintiff is entitled to total disability compensation. Accordingly, we hold the Commission did not err.

### III. Conclusion

For the aforementioned reasons, we hold the Commission did not err, and we affirm its opinion and award.

AFFIRMED.

Judges STADING and FREEMAN concur.

Report per Rule 30(e).